Gale TUSTIN, Milton Ruiz, and Ismael Soto and All Persons Similarly Situated, Plaintiffs-Appellees,

v.

Margaret HECKLER, Secretary of United States Department of Health and Human Services, Defendant-Appellant.

No. 84–5507.

United States Court of Appeals, Third Circuit.

Argued Sept. 11, 1984.

Decided Dec. 7, 1984.

David A. Saltman, Julius J. Feinson, Kevin Kovacs (Argued), Newman, Herman, Saltman, Levitt & Feinson, P.A., East Windsor, N.J., for plaintiffs-appellees.

W. Hunt Dumont, U.S. Atty., Newark, N.J., Richard K. Willard, Acting Asst. Atty. Gen., William Kanter, Robert V. Zener (Argued), Attys., Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., for defendant-appellant.

Robert Abrams, Atty. Gen. of the State of N.Y., Frederick Mehlman, Paul M. Glickman, Mary Fisher Bernet, Asst. Attys. Gen., New York City, for amicus curiae State of N.Y. in support of plaintiffs.

Before SEITZ and BECKER, Circuit Judges, and ROSENN, Senior Circuit Judge.

## OPINION OF THE COURT

BECKER, Circuit Judge.

On April 14, 1984, responding to widespread problems in the administration of

the Social Security Disability Program and to the expectation that comprehensive legislation would soon be enacted to alleviate these problems, the Secretary of Health and Human Services (the "Secretary") decided to suspend periodic review of disability determinations. The periodic review program had been instituted in 1980 to enable the Secretary to terminate the disability benefits of persons who, upon reevaluation, were found to be capable of engaging in substantial gainful employment. As part of the decision to suspend periodic review, the Secretary restored benefits to individuals whose periodic review cases had not received final administrative decisions. The Secretary did not, however, restore benefits to individuals whose benefits had been terminated pursuant to the review procedure and whose appeals were pending in the federal courts.[1]

The plaintiffs, persons in this latter group, brought suit in the district court for the District of New Jersey seeking injunctive relief on behalf of all similarly situated individuals, and challenging on equal protection grounds the Secretary's decision to distinguish between disability review cases on the basis of whether the claimants had received final administrative determinations. On July 12, 1984, finding that the requirements of Fed.R.Civ.P. 23(b)(2) were met, the district court certified a nationwide class comprising all individuals with appeals from adverse periodic review disability determinations pending in the federal district courts. The district court also decided that, because the distinction relied on by the Secretary was "chimerical," her decision did not meet the (applicable) rational relation test and was unconstitutional. Accordingly, the district court granted a preliminary injunction requiring the Secretary to restore benefits to the class.

Concluding that the district court erred in declaring the Secretary's decision unconstitutional, we now vacate its order granting a preliminary injunction. Although the court's class certification does not give rise to an appealable order, we remand so that the district court may decide whether to vacate the class certification in light of our decision on the merits.

## I. FACTS AND PROCEDURAL HISTORY

### A. The Periodic Review Process

In 1980, Congress amended the Social Security Act to require review of the eligibility of each disability beneficiary at least once every three years.[2] Implementation of this rather straightforward mandate has, however, been controversial. Central to the controversy has been the lack of a national standard for reviewing cases to determine whether continued disability benefits are warranted. Initially, the Secretary adopted a standard of review that required termination of benefits when the current evidence of record supported a finding that the person was able to engage in substantial gainful activity. See 45 Fed. Reg. 55,566, 55,568 (Aug. 20, 1980). This standard was challenged in court, however, and several courts of appeals concluded that the Secretary's standard was improper, although these courts disagreed among themselves as to the appropriate standard of review.[3] As a result, several standards

---

1. *See* 42 U.S.C. § 405(g) (1982).

2. *See* Social Security Disability Amendments of 1980, Pub.L. No. 96–265, § 311(a), 94 Stat. 441, 460 (1981) (currently codified at 42 U.S.C. § 421(i) (1982)). Congress established the periodic review requirement because it determined that the system of review used prior to 1980 was inadequate. *See* S.Rep. No. 96–408, 96th Cong., 2d Sess. 13–14, *reprinted in* 1980 U.S.Code Cong. & Ad.News 1277, 1292. Under the pre-1980 "medical diary" procedure, the Secretary limited reviews to cases that, in the Secretary's opinion, probably arose out of temporary disabilities.

*Cf. infra* note 7 (discussing the "medical diary" procedure currently used in the disability benefits program).

The 1980 review requirement was subsequently tempered by the 1983 amendments to the Social Security Act that gave the Secretary discretion to waive the requirement on a state-by-state basis. *See* Pub.L. No. 97–455, § 3 (amending 42 U.S.C. § 421(i)).

3. This circuit, for example, held that, once the claimant demonstrates a prior finding of disability and a continuation of the underlying medical condition, there is a presumption of

of review have been applied to disability redeterminations, so that a person's eligibility has depended as much on one's state of residence as on one's condition of disability.

Responding to these "significant problems and dislocations," and "reaffirming [a] commitment to and insistence upon a nationally uniform disability insurance program," S.Rep. No. 98–466, 98th Cong., 2d Sess. 6, 9 (1984), the 98th Congress, true to the Secretary's expectations, enacted legislation establishing a uniform standard for disability reviews.[4] This legislation was signed into law by the President on October 9, 1984. Although the enacted statute provides the named plaintiffs and class members with some of the relief that they would otherwise receive as a result of the district court's injunction in this case, it does not moot this appeal.[5] We therefore turn to the Secretary's April 1984 decision.

After considering the substantial problems inherent in administering a national disability program with widely varying eligibility standards and the apparently imminent enactment of a comprehensive disability standard,[6] the Secretary announced that the Social Security Administration (SSA) would suspend the disability review process until the legislation was enacted and implemented. *See* Appendix at 4. The Secretary also directed the SSA to restore current and retroactive benefits to all individuals with claims pending at the administrative level. *See id.* On May 22, 1984, a Ruling was issued by the Acting Commissioner of SSA to implement the Secretary's announcement. The Acting Commissioner specified that "determinations and decisions of disability cessation for medical reasons" would be rescinded for:

> [i]ndividuals who have not received an Appeals Council decision or notice denying a request for review by the Appeals Council of the administrative law judge decision on their periodic review claims and who have such claims properly pending in the Department. People who, as of the effective date of this policy, still have time to appeal the determination to stop their benefits to the next administrative review level also will have their [disability] determinations rescinded."

*Id.* at 16–17.

The Ruling did *not* rescind adverse decisions and restore benefits for

---

continuing disability that the Secretary must rebut by presenting evidence of medical improvement. *Kuzmin v. Schweiker*, 714 F.2d 1233, 1237 (3d Cir.1983). This standard differs from the standards developed by other courts of appeals. *See, e.g., Rush v. Secretary of Health and Human Services*, 738 F.2d 909, 914 & n. 4 (8th Cir.1984) (when the prior disability determination was made pursuant to a hearing, there is a presumption that the disability remains); *Cassiday v. Schweiker*, 663 F.2d 745, 746–47 (7th Cir.1981) (apparently upholding the Secretary's standard).

**4.** *See* Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, § 2 (to be codified at 42 U.S.C. § 423). The uniform standard provides that the Secretary may terminate disability benefits because the person is no longer disabled only if there is substantial evidence demonstrating that (i) there has been medical improvement in the individual's impairment (other than medical improvement which is not related to the individual's ability to work) and (ii) the individual is now able to engage in substantial gainful activity.

**5.** The relief sought by appellees in this case would unconditionally restore disability bene-

fits to all class members from April 18, 1984. The new law provides that cases pending in district courts will be remanded for new administrative determinations and that disability benefits will be available to such individuals pending administrative review under the new national standard. *See id.* §§ 2(d), 2(e). These interim benefits are, however, available only from the month in which the individual elects to receive them following remand, *see id.* § 2(e), and the interim benefits may also be subject to recoupment, *see id.* § 7. Thus, although the new law mitigates the inequity that resulted from the Secretary's decision, it does not provide the class with full relief, and there is a live controversy before this court.

**6.** At the time the Secretary announced her decision, legislation had been passed only by the House of Representatives, although action by the Senate was expected shortly. *See* Appendix at 16 ("The House of Representatives has recently approved legislation .... and there are assurances by leaders of the Senate Finance Committee that they will act soon on a disability bill.").

[i]ndividuals who received an Appeals Council decision or notice denying review and those whose claims were not properly pending administratively ... as of [April 13, 1984].... Similarly, cases pending in the Federal courts for review of a final agency decision ... are not subject to the Secretary's policy even if a court has remanded the case for further administrative action.

*Id.* at 17.[7]

The Ruling by the Acting Administrator outlined the following three reasons for the agency's actions: (1) the disability review program was suspended because "the SSA cannot effectively administer the ... program in the fair and humane way that the agency desires"; (2) restoration of benefits to individuals with claims pending in the administrative process was considered "particularly justified" because of "[t]he absence of ... an opportunity [to pursue their periodic review claims] and of a final agency decision by the Appeals Council"; and (3) benefits were not restored to individuals with "cases pending in the Federal courts for review of a final agency decision" because those individuals have "pursued [their] periodic review claim[s] through all steps of the administrative review process." *Id.* at 16–17.[8]

## B. *The Challenge to the Secretary's Decision*

The three named plaintiffs in this case, Gale Tustin, Milton Ruiz, and Ismael Soto, had their disability benefits terminated by the Secretary pursuant to the periodic review procedure. Their individual appeals of the disability terminations were pending in the district court for the District of New Jersey at the time that the Secretary made her decision to restore disability benefits to persons with pending administrative disability determinations. These plaintiffs then brought this separate action in the same court on behalf of themselves and all other persons with appeals of disability determinations then pending in any United States district court. The plaintiffs sought a declaration that the Secretary's failure to rescind their terminations and to restore their benefits was a violation of the equal protection component of the due process clause of the fifth amendment;[9] they also sought injunctive relief.

After a hearing on the merits, the district court granted the plaintiffs request for a preliminary injunction. The court concluded that the Secretary based the classification on a "chimerical" distinction between disability recipients, and held that the "criterion ... bears no rational relationship to a legitimate legislative goal." *Tustin v. Heckler,* 591 F.Supp. 1049, 1061 (D.N.J.1984).

The court also certified a nationwide class pursuant to Fed.R.Civ.P. 23(b)(2). The court's order defined the class as:

all persons nationwide who have had their Social Security disability benefits terminated for reasons having to do with the evaluation of a medical condition pur-

---

**7.** The Secretary decided that SSA would not suspend the administrative review of "medical diary reexamination cases." The Secretary offered the following reasons for her decision: The impairments of people scheduled for a continuing disability review pursuant to a reexamination diary are different from those selected for periodic review. Medical reexamination diary cases involve people who have impairments from which SSA expects them to recover in a short time, and who were told to expect the review as of a specified month. *Id.* at 18. The decision about medical diary cases is not at issue in this case.

**8.** Similarly, the Acting Administrator explained that the rescission of administrative determinations and restoration of benefits did not apply to

those with claims pending in courts "because the decisions in their cases have become final administrative determinations." *Id.* at 17.

**9.** The Supreme Court has stated that it "repeatedly has held that the Fifth Amendment imposes on the Federal Government the same standard required of state legislation by the Equal Protection Clause of the Fourteenth Amendment." *Schweiker v. Wilson,* 450 U.S. 221, 226 n. 6, 101 S.Ct. 1074, 1079 n. 6, 67 L.Ed.2d 186 (1981) (citing *Weinberger v. Salfi,* 422 U.S. 749, 768–70, 95 S.Ct. 2457, 2468–69, 45 L.Ed.2d 522 (1975) and *Richardson v. Belcher,* 404 U.S. 78, 81, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971)). *See also Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954).

suant to a periodic review conducted under Section 221(i)(1) of the Social Security Act and who presently have a claim appealing said termination pending in a United States District Court.

Appendix at 68 (Order of July 12). According to the Secretary, there are between 9,000 and 11,250 members in this class. Brief for Appellant at 14 n. 7.

After the district court issued its July 12 order, the Secretary moved for a stay. On July 24, 1984, the court granted the stay until September 4, 1984, "on the condition that [the Secretary] move for expedited disposition of the appeal." Appendix at 93. This court expedited the appeal that followed, and has continued the stay during its pendency.

■ We turn first to a discussion of the preliminary injunction. It is now settled law in this circuit that "reversal [of a decision on a preliminary injunction] is warranted if the trial court has abused its discretion or committed error in applying the law." *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1242 (3d Cir.1983), *cert. dismissed,* — U.S. ——, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984); *see also Rennie v. Klein,* 653 F.2d 836, 840 (3d Cir.1981) (in banc); *Kennecott Corp. v. Smith,* 637 F.2d 181, 187 (3d Cir.1980). Because the preliminary injunction in this case rested on the district court's decision that the Secretary's classification was unconstitutional, a decision that did not turn on any factfinding, we consider here whether the district court committed an error of law. On questions of law, our scope of review is plenary. *See Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 102 (3d Cir.1981); *St. Claire v. Cuyler,* 634 F.2d 109, 116 n. 9 (3d Cir.1980).

## II. *THE DISTRICT COURT OPINION; THE CONTENTIONS ON APPEAL*

The district court concluded that the Secretary acted irrationally when she failed to rescind disability determinations and restore benefits to those who had received final administrative decisions and whose cases were pending in federal district courts. The court set out three principal reasons for this conclusion. Most important, the district court decided that the Secretary acted improperly when she distinguished among claimants on the basis of a "final" administrative determination. The court surveyed data supplied by the SSA and the Administrative Office of the United States Courts that indicated, first, that federal courts reversed directly or remanded to the SSA for additional proceedings over two-thirds of the SSA decisions before them and, second, that "vast" numbers of individuals who received adverse decisions challenged those decisions in court. *See Tustin,* 591 F.Supp. at 1059–61. Based on these data, the court reasoned that:

the proffered rationale for the distinction in the disputed ruling between those who have or have not obtained such a "final" decision is chimerical. The government is, in effect, discriminating among claimants to funds from the public treasury on the basis of a criterion which bears no rational relationship to a legitimate legislative goal.

The governmental interest in equitably and efficiently managing the disability program is not at all served by a distinction which grants temporary benefits to persons who have not heard the Secretary's last word on their claims to benefits but denies restoration to a group of claimants who have heard that word, but who will predictably end up proving that that last word was erroneous.

*Id.* at 1061.

Concomitantly, the district court found that because, once enacted and implemented, the legislative initiative that had prompted the Secretary's action "would affect plaintiffs to the same extent as it would affect those persons still within the administrative review process," her distinction between two groups during the pre-enactment period was irrational, as was the decision to "burden" courts "with making determinations the Secretary has determined not to make." *Id.*

Additionally, in light of the Secretary's participation in consent judgments that restored benefits to individuals in the same situation as the plaintiffs, the district court found that there was neither a "fair nor logical" reason why a final decision "should be given weight when no other decision within the administrative review process is any longer given any weight." *Id.*

The government argues that the Secretary acted reasonably because her changes in program administration reflected an important characteristic of a discrete group of recipients engaged in the review process. Specifically, the government contends that:

persons [with final administrative determinations] were not faced with the effect which the freeze on administrative processing of claims had on persons with pending administrative claims. Unlike persons with claims pending in the administrative process, persons with final administrative decisions have an avenue open to obtain reversal of an erroneous termination of benefits.

Appellant's Brief at 21.[10]

Appellees rely primarily on the decision of the district court. They also argue that the Secretary's classification is irrational because "it gives weight to administrative decisions rendered under a standard attacked in several Courts of Appeals and abandoned by the Secretary at the administrative level." Appellees' Brief at 21. Finally, appellees challenge the classification because it does not provide relief to those "most in need of ... relief in that they have been so long without benefits." *Id.*

## III. *RATIONALITY OF THE SECRETARY'S DECISION*

■ Although the equal protection component of the due process clause, *see supra* note 9, does not require that the government treat all persons alike, *Tigner v. Texas,* 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124 (1940), the equal protection requirement does ensure that, when the government distinguishes among individuals or groups, the distinctions must be sufficiently justified.[11] Since the watershed case of *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970), the Supreme Court has approached governmental classifications "[i]n the area of economics and social welfare" with substantial deference: "a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" *Id.* (quoting *Lindsley v. National Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911)). *See also Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981) (The government in social welfare legislation only needs to "classify the persons it affects in a manner rationally related to legitimate governmen-

---

**10.** The plaintiffs' argument that the government is suggesting a post-hoc rationalization for the Secretary's action is not persuasive. The "final determination" rationale was set out in the May 22 Ruling and argued in district court. *See* Reply Brief for Appellant at 7 n. 7 (quoting Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction at 11). Thus, there is no need to address the question whether the rational relation test limits in any way the government's ability to proffer rationales for a classification that were not advanced at the time the classification was made. *Cf. Delaware River Basin Comm'n v. Bucks County Water & Sewer Author.,* 641 F.2d 1087, 1097 (3d Cir.1981) (Applying the rational relation test, the court stated that "[s]o long as we are careful not to attribute

to the legislature purposes which it cannot reasonably be understood to have entertained, ... in examining the challenged provisions we may consider purposes advanced by counsel for the [agency] or suggested initially by ourselves." (footnote omitted)).

**11.** Modern equal protection doctrine has been subjected to rigorous and thoughtful analysis by courts and commentators. The doctrine is discussed generally with relevant citations in G. Gunther, *Constitutional Law* 670–971 (10th ed. 1980 & Supp.1983); L. Tribe, *American Constitutional Law* §§ 16–1 to 16–57, at 991–1136 (1978 & Supp.1982).

tal objectives."). The narrow scope of judicial review inherent in the rational relation test has been considered necessary by the Supreme Court in order to ensure that the legislature has "substantial latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill." *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982).

We recently applied this standard of review to the Pennsylvania welfare reform law, notwithstanding "the profound impact that [the law] will have on the lives of so many Pennsylvanians." *Price v. Cohen,* 715 F.2d 87, 96 (3d Cir.1983).[12] The *Price* panel stated that it was reluctant to apply such a deferential standard, but that it felt fully bound by Supreme Court precedent. *See Price,* 715 F.2d at 96. *Cf. Dandridge,* 397 U.S. at 485, 90 S.Ct. at 1162 (concluding that the rational relation test, although developed in the context of economic regulation, should apply to "[t]he administration of public welfare ... [which] involves the most basic economic needs of impoverished human beings"). With this understanding of the limited judicial role in scrutinizing economic and social legislation, we turn to the classification at issue in this case.

It is clear that the Secretary acted rationally when she decided in April that widespread administrative problems and imminent legislative action justified some immediate change in the administration of the disability benefits program and that a suspension of periodic administrative reviews of disability determinations was necessary

as a first step to reform the system. The propriety of this decision has never been at issue in this case.

■ Once the Secretary decided that a suspension of administrative reviews was warranted, she had to decide how to treat individuals who had periodic disability reviews pending in the administrative system or the courts. Plaintiffs do not argue that the Secretary's decision to rescind administrative determinations and to restore benefits for those individuals who lacked final agency decisions was, standing alone, irrational. In fact, considering that these individuals had no statutory right of appeal to the courts because their administrative remedies had not been exhausted, *see* 42 U.S.C. § 405(g) (1982); *see also id.* § 405(b), one could argue persuasively that the Secretary's decision would have been unlawful had she not provided some relief for individuals with claims still pending in the administrative system at the time she suspended disability reviews.

We recognize that the Secretary might have waived the exhaustion requirement for those individuals whose administrative claims were pending, *see Mathews v. Diaz,* 426 U.S. 67, 76, 96 S.Ct. 1883, 1889, 48 L.Ed.2d 478 (1976), but we conclude that her decision not to do so was rational in light of the important policies served by the exhaustion requirement. Exhaustion of administrative remedies ensures that the Secretary has a chance to develop fully her position in a case before she must defend that position in the courts, and that the judiciary has access to a detailed administrative record that will facilitate meaningful judicial review. Therefore, the Secretary could rationally have concluded that granting a general waiver would have

---

12. The welfare reform law established two categories of needy persons, the chronically needy and the transitionally needy, and allowed year-round general assistance relief to the former group and three months' general assistance payments in any twelve-month period to the latter group. "The distinction between the two groups [was] essentially an age distinction." *Id.* at 90. The *Price* panel specifically stated that because of the statutory limit on the amount of general assistance available to the affected class, "[b]leak and uncertain futures confront the

named plaintiffs." *Id.* The panel was particularly distressed that the act classified as transitionally needy a woman who was within the age limits, even though she was pregnant with her first child "[a]t a time when her health and nourishment are of exceptional importance to her child's development." *Id.* at 91. Nevertheless, the panel concluded that the statutory scheme was constitutional when it was considered under the "sharply limited" review required by Supreme Court precedent. *Id.* at 95–96.

placed an unwarranted burden on HHS and the courts.[13]

Plaintiffs argue that the Secretary was irrational in not restoring benefits to *all* persons affected by the suspension of the periodic review program. This argument is unpersuasive. Unlike persons with claims subject to additional review in the administrative agency, persons with final administrative decisions have both the clear statutory right to appeal the disability determination in a federal district court and the well-developed record that makes the appeal meaningful. Once in the courts, these claimants may (or may not) win a remand for further proceedings, or an outright re-versal of the Secretary that directs an award of benefits, *see Podedworny v. Harris*, 745 F.2d 210, at 221–222 (3d Cir.1984). Although faced with the inconvenience and expense of further proceedings, such claimants may still recover benefits as a result of the judicial review provided by the statute. Given the narrow scope of review to which we must adhere, we cannot say that the Secretary acted irrationally when she decided that she would rescind administrative determinations and restore benefits only to those whose claims had not been finally resolved by the agency.[14]

The Secretary acknowledges, as she must, that her policy has resulted in some

---

**13.** Our decisions in *Liberty Alliance of the Blind v. Califano,* 568 F.2d 333, 344 (3d Cir.1977) and its progeny likewise do not undercut this analysis. In *Liberty Alliance* we concluded that the § 405(g) requirement of a "final decision" is waivable "either by the Secretary, *Mathews v. Diaz,* 426 U.S. 67, 76 [96 S.Ct. 1883, 1889, 48 L.Ed.2d 478] ... (1976) ... or, under certain circumstances, by the court on its own determination, *Mathews v. Eldridge,* 424 U.S. 319, 328 [96 S.Ct. 893, 899, 47 L.Ed.2d 18] ... (1976)," as long as the plaintiff's claim had been before the Secretary at some time. 568 F.2d at 344. Although *Liberty Alliance* holds that jurisdiction in federal courts may be available even when the § 405(g) requirement is not met, the case does not lead to a conclusion that the policies of the exhaustion requirement outlined in text are insubstantial. *Liberty Alliance* simply recognizes that there will be cases in which the requirement of exhaustion does not serve any underlying policy, such as when a claimant raises a constitutional claim that a federal court is more qualified to address than the agency. When, however, the claim involves an individual disability determination, the policies of exhaustion counsel full compliance with the § 405(g) requirement. The decision at issue in this case affected individuals with claims of this latter type.

**14.** Appellees suggest that this case is analogous to *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). *See* Appellees' Brief at 21. In *Logan,* the plaintiff's otherwise timely employment discrimination claim was barred by a rule that gave the state agency only 120 days within which to convene a fact-finding conference. Because the dismissal of Logan's claim was due solely to the state agency's failure to comply with the state's own timing requirement, Logan claimed that he was deprived of equal protection. Despite the fact that the opinion of the Court concluded that the state statute violated procedural due process guarantees, six justices also applied the rational relation test to the classification and concluded that the classification was irrational. *See* 455 U.S. at 438, 102 S.Ct. at 1159 (separate opinion of Blackmun, J., joined by Brennan, Marshall and O'Connor, J.J.); *id.* at 443, 102 S.Ct. at 1161 (concurring opinion of Powell, J., joined by Rehnquist, J.). The Justices concluded that the state could present no rational reason for distinguishing between individuals whose fact-finding conferences were convened by the state within 120 days and individuals whose conferences were not:

> Under [the state's] classification, claimants with identical claims, despite equal diligence in presenting them, would be treated differently, depending on whether the Commission itself neglected to convene a hearing within the prescribed time. The question is whether this unusual classification is rationally related to a state interest that would justify it.
>
> The State no doubt has an interest in the timely disposition of claims. But the challenged classification failed to promote that end—or indeed any other—in a rational way. As claimants possessed no power to convene hearings, it is unfair and irrational to punish them for the Commission's failure to do so. The State also has asserted goals of redressing valid claims of discrimination and of protecting employers from frivolous lawsuits. Yet the challenged classification, which bore no relationship to the merits of the underlying charges, is arbitrary and irrational when measured against either purpose.

*Id.* at 443–44, 102 S.Ct. at 1162 (Powell, J., concurring). *Logan,* however, is inapposite in the context of the present case, because, as we discuss in text, the classification at issue here reflects rational differences between individuals with disability reviews pending at the agency level and individuals with final administrative decisions.

We are also unpersuaded by the subsidiary arguments outlined by the district court. *See su-*

inequity. *See* Appellant's Brief at 22–23.[15] We are unable, however, to overturn a governmental decision that results in inequity that is neither invidious nor irrational. *See Schweiker v. Wilson*, 450 U.S. 221, 234, 101 S.Ct. 1074, 1082–83, 67 L.Ed.2d 186 (1981) ("In the area of economics and social welfare ... [i]f the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequity."); *Price v. Cohen*, 715 F.2d 87, 95 (3d Cir.1983) ("We may not ... reject common sense propositions relied on by the state because they are overbroad or under-inclusive.").

In sum, we conclude that the Secretary's classification was rational because it reasonably reflected the importance of a final administrative decision under the statutory scheme.[16]

## IV. *CERTIFICATION OF THE NATIONWIDE CLASS*

■ In its July 12 order, the district court certified a class defined to include "all persons nationwide who have had their Social Security disability benefits terminated for reasons having to do with ... a periodic review conducted under Section 221(i)(1) ... and who presently have a claim appealing said termination pending in a United States District Court." Appendix at 68. The nationwide class was certified pursuant to Fed.R.Civ.P. 23(b)(2). Following normal 23(b)(2) practice, the district court provided for no notice to members of the class and no opportunity to opt out, despite the fact that some class members were named plaintiffs in other suits in the district courts. *See Tustin*, 591 F.Supp. at 1069.

The government argues with great force that the district court abused its discretion and committed legal error in certifying this class. Noting that the precise issue considered here is now being litigated in suits pending in various districts in six other circuits, *see* Appellant's Brief at 15 n. 8, 17 n. 11, the government contends that the principle of comity precludes the certification of this nationwide class because the class was defined without "sensitivity to ongoing litigation of the same issue in other districts." *Califano v. Yamasaki*, 442 U.S. 682, 703, 99 S.Ct. 2545, 2558, 61 L.Ed.2d 176 (1979). The government con-

---

*pra* page 1061. We note in particular our disagreement with the portion of the district court's opinion that found irrationality in the Secretary's decision because she settled with several individual claimants who had appealed final administrative decisions in court. These settlements resulted in rescission of the final administrative decisions and restoration of benefits to the claimants. Rather than render the Secretary's decision irrational, these settlements apparently indicate her willingness to allow an immediate restoration of disability benefits based on the facts at issue in a specific case.

**15.** The government attempts to minimize the nature of the inequity caused by the decision at issue in this case. The government states that:

the restoration of benefits at the administrative level will inevitably mean that some persons will receive benefits although it might ultimately be found that they are not entitled to them under present law .... By contrast, persons with claims pending in court will be subjected to an adjudication on the merits and will not have their benefits restored if they are not entitled to them under the law.

Appellant's Brief at 22. By admitting only this inequity, however, the government ignores the inequity of providing to some claimants the benefits due to them under the law at a substantially earlier date than statutory benefits will be paid to other equally deserving claimants. This delay results in significant hardship for these plaintiffs and is inequitable for them vis-a-vis the individuals who are benefitted by the Secretary's decision. As we noted above, *see supra* note 5, the Social Security Disability Benefits Reform Act of 1984 substantially mitigates this inequity.

**16.** Notwithstanding this conclusion, we respect the district court's expression of injustice upon reviewing the Secretary's decision, given the poor administration of the periodic review program. *See Wier ex rel. Wier v. Heckler*, 734 F.2d 955, 957 (3d Cir.1984) ("[W]hat troubles us more is the fact that the Secretary so often appears to have wrongfully withheld benefits or to have processed a claim so that it is impossible to tell whether he correctly denied benefits"). Our decision in this case, however, is largely compelled by the important limitations that the Supreme Court has imposed on the extent to which we may scrutinize an action of the Secretary in administering a social welfare program.

tends that comity within the federal system counsels that a legal issue be litigated in a number of courts so that, if it is ever necessary for the Supreme Court to consider the question, all of the legal arguments will have been fully developed and the law on the subject will have matured. *See id.* at 701–02, 99 S.Ct. at 2557–58. In addition to this general contention, the government presents a number of specific problems to illustrate the hazards of certifying a class without sufficient attention to the principle of comity. These problems relate both to the status of a class member who is also a plaintiff in another pending case, and to how the district courts should proceed with these related cases. For example, are there any limits on the authority of some other district court to decide a plaintiff's disability claim on the merits? What happens to a class member whose identical constitutional claim is resolved in another court during the pendency of this action?

Appellees respond that the district court acted properly in certifying the nationwide class precisely because a decision that the Secretary's classification deprives any named plaintiff of the equal protection of the laws also necessarily decides the issue for all other persons with appeals of disability review determinations pending nationwide. In appellees' submission, a universal resolution of the issue is necessary not only to vindicate rights but to facilitate prompt Supreme Court review. They contend that the nationwide class does not interfere with the prior jurisdiction of district courts throughout the country, but simply prevents a deluge of adjudications of the identical legal issue. In appellees' view, the nationwide class is an important device for controlling unnecessary and duplicative litigation because it allows for certain and final resolution of a discrete legal issue. Appellees also argue that the Su-

preme Court recognized the value of nationwide classes in social security litigation when it affirmed the class certification in *Yamasaki*, over the Secretary's objection that a nationwide class "forecloses reasoned consideration of the same issues by other federal courts."[17] *Id.* They acknowledge that the issue litigated here is also directly raised in other cases brought by class members, but they argue that no other class action has been certified.[18]

Although we would like to be able to resolve this issue because the impact of the district court's decision is this case is so greatly magnified by its class action determination, we are prevented from doing so by a jurisdictional defect. In *Kershner v. Mazurkiewicz*, 670 F.2d 440, 449 (3d Cir. 1982) (in banc), this court considered the appeal of a district court order that denied both a preliminary injunction and class certification. *See id.* at 445. The court affirmed the denial of the injunction, but held that "a pendent class certification order is not appealable under section 1292(a)(1) unless the preliminary injunction issue cannot properly be decided without reference to the class certification question." *Id.* at 449 (footnote omitted). The court in *Kershner* specified that the requisite relationship is present only when the class certification issue "directly controls disposition of the [preliminary injunction issue], or [when] the issues are, in some other way, inextricably bound."[19] *Id.*

The instant case also presents an appeal from an order of the district court that disposed of requests for both a preliminary injunction and class certification. As in *Kershner, see id.* at 450, we do not find an inextricable linkage between the two decisions of the district court. In fact, the issues critical to a decision about the propriety of the class certification in this case

---

**17.** Both the Secretary and the appellees rely on the Supreme Court's decision in *Yamasaki.*

**18.** The Secretary disputes this point. *See* Appellant's Reply Brief at 5 n. 5 (contending that a state-wide class was certified in the Northern District of Indiana).

**19.** The *Kershner* court also stated that "a mere nexus between the two orders is not sufficient to justify a decision to assume jurisdiction." *Kershner,* 670 F.2d at 449–50.

are entirely separate from the legal issues upon which we focused in resolving the preliminary injunction issue. While the enormous practical impact that the certification of a nationwide class imparts to the district court's action might arguably furnish a basis for distinguishing *Mazurkiewicz*, we suspect that such a distinction might swallow up the *Mazurkiewicz* rule. Thus, we conclude that we have no jurisdiction to resolve the class certification issue in this case.

It is important to stress, however, that the district court has the authority to reconsider its certification of the nationwide class following remand. *See* Fed.R.Civ.P. 23(c).[20] We are confident, given our resolution of plaintiffs' request for a preliminary injunction, that the district court will in fact engage in this re-evaluation.

### V. *CONCLUSION*

We hold that the Secretary did not violate the equal protection component of the due process clause of the fifth amendment when she suspended the periodic review process but rescinded administrative determinations and restored benefits only for persons who had not yet received final administrative decisions. We conclude, therefore, that the district court erred as a matter of law when it found that the plaintiffs had made a showing of probable success on the merits. Accordingly, we vacate the preliminary injunction and remand the case for further proceedings consistent with this opinion. Each side shall bear its own costs.

---

**20.** Under the present circumstances, it would seem unlikely that the plaintiffs will press for a nationwide class. Given its position before this court, it appears unlikely that the government will object to an order of decertification.