**COLT INDUSTRIES INC.**

·v.

**FIDELCO PUMP & COMPRESSOR CORPORATION and Fidelco Equipment Corporation, Appellants.**

No. 87–5340.

United States Court of Appeals, Third Circuit.

Argued Dec. 2, 1987.

Decided April 8, 1988.

Rehearing and Rehearing In Banc Denied May 5, 1988.

Michael M. Rosenbaum (argued), Donald P. Jacobs, Budd Larner Gross Picillo Rosenbaum Greenberg & Sade, P.C., Short Hills, N.J., for appellants.

John J. Carlin, Jr. (argued), Donald J. Fay, Law Offices of John J. Carlin, Jr., P.C., Florham Park, N.J., for appellee.

Before WEIS,* HIGGINBOTHAM and ROSENN, Circuit Judges.

* At the time of oral argument on this appeal, Honorable Joseph F. Weis, Jr., was an active Circuit Judge. Judge Weis has since taken senior status.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr.,
Circuit Judge.

This is an appeal from the district court's order denying appellants' motion for a preliminary injunction. Appellants sought to prevent appellee from terminating a distributorship agreement it had with them. Appellants argue that the district court erred in concluding that they had failed to demonstrate a reasonable probability of success on the merits of their claim that they were a franchise. We find that the district court did not err in applying the law or in finding the facts. Accordingly, we will affirm the judgment of the district court.

### I.

Appellants Fidelco Pump & Compressor Corporation and Fidelco Equipment Corporation (together, "Fidelco") are multi-state corporations that sell and service pumps and compressors. Appellee Colt Industries Inc. ("Colt") manufactures the Quincy brand of pumps and compressors, which are sold through independent distributors.

In December 1985, Fidelco entered into agreements with Colt to pay a predecessor company's outstanding debt of $87,000 to Colt, and to be appointed a Quincy distributor. The agreements provided Fidelco with non-exclusive distributorships in New Jersey and Connecticut;[1] according to Colt, those two states were to be Fidelco's "primary area of responsibility." The agreements were to expire after one year, but they were renewable. Each party also had the right to terminate the agreements, without cause, upon sixty days written notice. Although the agreements expired on January 15, 1987, the parties continued their business relationship until March 26, 1987. On that date, Colt, without providing any reason, sent Fidelco a termination notice. Colt subsequently filed a federal

diversity action to recover $41,000 still due on the debt agreement.

Fidelco filed a petition in the district court seeking a preliminary injunction to prevent Colt from terminating the agreements. Fidelco contended that its agreements with Colt constituted franchise agreements and that Colt's attempted termination of Fidelco violated New Jersey's Franchise Practices Act, N.J.Stat.Ann. §§ 56:10–1 to 10–15 (West Supp.1987) ("the Act"), which provides that termination of a franchise agreement must be based upon good cause.

The district court concluded that Fidelco failed to demonstrate a reasonable probability of success on the merits of its claim that the agreements constituted franchise agreements subject to protection under the Act and, therefore, denied Fidelco's motion for a preliminary injunction.

Following the denial of the preliminary injunction, Fidelco filed an appeal to this Court. Chief Judge Gibbons granted a temporary restraint, noting that "the appellants are likely to succeed on the merits of their contention that their agreements with Colt fall within the New Jersey and Connecticut franchise acts" and that "the appellants are likely to succeed on the merits of their contention that termination of their franchises will cause irreparable harm." *Colt Indus. Inc. v. Fidelco Pump & Compressor Corp.*, No. 87–5340 (3d Cir. May 29, 1987), *reprinted in* Joint Appendix ("JA") at 194–95. Thereafter, a motions panel, with one judge dissenting, denied Fidelco's request for a preliminary injunction during the pendency of this appeal. *Colt Indus. Inc.*, No. 87–5340 (3d Cir. June 11, 1987), *reprinted in* JA at 196.

### II.

The party seeking a preliminary injunction has the burden of demonstrating: (1) a reasonable probability of success on the merits; (2) irreparable harm if the injunc-

---

**1.** The district court concluded that Connecticut's franchise act is less inclusive than is New Jersey's, and that, because the Colt–Fidelco agreement did not constitute a franchise agreement under the New Jersey statute, it was unneces-

sary to address the issue whether the agreement was a franchise agreement under the Connecticut statute. This legal conclusion is not disputed by the parties. Appellant's Brief at 12 n. 4; Appellee's Brief at 13 n. 1.

tion is denied; and (3) that the issuance of an injunction will not result in greater harm to the non-moving party. *ECRI v. McGraw–Hill, Inc.*, 809 F.2d 223, 226 (3d Cir.1987); *SI Handling Systems Inc. v. Heisley*, 753 F.2d 1244, 1254 (3d Cir.1985). The district court concluded that Fidelco failed to demonstrate a reasonable probability of success on the merits.

■ This Court will affirm the grant or denial of a motion for a preliminary injunction unless the district court abused its discretion, committed an error of law or made a clear mistake on the facts. *ECRI*, 809 F.2d at 226; *Tustin v. Heckler*, 749 F.2d 1055, 1060 (3d Cir.1984).

Fidelco's assertion that it will prevail on the merits is based solely on its contention that the agreements with Colt constituted franchise agreements and, therefore, that they could be terminated only upon a showing of good cause. The New Jersey Franchise Practices Act defines a franchise as

a written arrangement for a definite or indefinite period, in which a person grants to another person a license to use a trade name, trade mark, service mark, or related characteristics, and in which there is a community of interest in the marketing of goods or services at wholesale, retail, by lease, agreement, or otherwise.

N.J.Stat.Ann. 56:10–3(a). Thus, before we can properly determine whether the Colt–Fidelco agreement constituted a franchise under the New Jersey Franchise Practices Act, we must find (1) that Colt granted a trademark license to Fidelco, and (2) that there was a "community of interest" between Colt and Fidelco.

The district court concluded that the agreements did not constitute franchise agreements. It based this decision on a legal finding that Colt had not granted a license to Fidelco to use its trademark, and on a factual finding that there was no community of interest between Colt and Fidelco as is contemplated by the Act. We will address these elements in turn.

### A. Trademark License

Fidelco contends that the agreements with Colt granted it a license to use the Quincy trademark. Paragraph sixteen (16) of the distributorship agreement, however, provided that

[t]he words "Quincy Compressor" and/or any parts of said name or trademarks of Quincy Compressor, or of Colt Industries, its subsidiaries and affiliates or any simulation thereof will not be used as part of Distributor's business name; but, nevertheless, Distributor may display "Quincy Compressor" in a manner consistent with Quincy Compressor advertising policies as part of advertising of the product and indicating that Distributor is a Distributor of Quincy Compressor products covered by this Agreement. Distributor shall discontinue and refrain from all such advertising or representation in any use whatsoever of said name or trademarks or parts or simulations thereof upon the termination of this Agreement.

JA at 37.

A decision rendered by the New Jersey Superior Court is instructive to our review. In *Finlay & Assoc. v. Borg–Warner*, 146 N.J.Super. 210, 369 A.2d 541 (Law Div. 1976) (*"Finlay"*), *aff'd per curiam on other grounds*, 155 N.J.Super. 331, 382 A.2d 933 (App.Div.), *certif. denied*, 77 N.J. 467, 391 A.2d 483 (1978), the court, evaluating an agreement that is similar to the one at issue in the present case, rejected the contention that a license to use a trademark had been granted. The court stated that the "[m]ere furnishing of advertising materials as contemplated by the distributorship agreement, and allowing plaintiff to have its name placed on certain items, if it wished, as advertising (plaintiff using its own business name) for their own benefit does not fulfill the letter or intent of the Franchise Practices Act." 146 N.J.Super. at 219, 369 A.2d at 545.

The district court, however, noted that "the continuing validity of [*Finlay*'s] rather narrow definition of 'license' is somewhat cast into doubt by the subsequent decision of the Appellate Division in *Nep-*

*tune T.V. & Appliance Serv., Inc. v. Litton Microwave Cooking Prods. Div., Litton Systems, Inc.,* 190 N.J.Super. 153[, 462 A.2d 595] (App.Div.1983) [ (*"Neptune"*) ]." *Colt Indus., Inc. v. Fidelco Pump & Compressor Corp.,* No. 87–1347, Mem.Op. at 12 (D.N.J. May 29, 1987), *reprinted in* JA at 177. In *Neptune,* an appliance repair business ("Neptune") was designated by a division of Litton Systems, Inc. ("Litton"), as an "Authorized Litton service source" under a written agreement that incorporated a detailed "Service Policy and Procedural Guide." 190 N.J.Super. at 156–57, 462 A.2d at 597. This guide specified how warranty work was to be performed, required technicians to attend Litton training sessions and even explained how customer complaints were to be handled. Based upon this elaborate agreement and the fact that approximately 50% of Neptune's business derived from its work with Litton products, the Appellate Division of the New Jersey Superior Court concluded that Neptune had been granted a license to use the Litton trademark as a franchise, as that term is used in the New Jersey Franchise Practices Act. *Id.* at 160–61, 462 A.2d at 599.

■ The district court noted that the agreement in this case falls somewhere between the *Finlay* and *Neptune* agreements. *Colt Indus., Inc.,* No. 87–1347, Mem.Op. at 12–13 (D.N.J. May 29, 1987), *reprinted in* JA at 177–78. The Colt–Fidelco agreement provided that Fidelco could use the Quincy name only in a limited sense and that the Quincy brand name could not be used in Fidelco's business name. The agreement further restricted the use of the Quincy brand name by specifying that it was to be used only in a manner that is consistent with Colt's advertising policies. In our view, if this limited agreement constitutes a license to use a trademark, then any business selling a name brand product would, under New Jersey law, necessarily be considered as holding a license. Nothing in *Neptune* supports this extreme legal proposition. The district court, therefore, correctly concluded that the agreement did not constitute a grant of a trademark license to Fidelco.

## B. *Community of Interest*

■ The district court also determined that Fidelco, even if it was granted a license by Colt, failed to meet its burden of proof on the second prong of the definition of franchise under New Jersey law, *i.e.,* demonstrating a community of interest in the marketing of goods and services between itself and Colt.

Under the Act, a community of interest means more than the mere fact that two parties share in the profits realized when a product makes its way from manufacturer to the ultimate consumer. *Neptune,* 190 N.J.Super. at 163, 462 A.2d at 600. Courts analyzing whether an alleged franchisee is part of the class that is protected by the Act have looked for specific proof, focusing on certain indicia of control by the supposed franchisor over the supposed franchisee. *See, e.g., id.* at 163–64, 462 A.2d at 601.

The district court, based upon its findings of no indications of interdependency or control, properly concluded that the relationship between Fidelco and Colt was a cooperative one. *Colt Indus., Inc.,* No. 87–1347, Mem.Op. at 17–18 (D.N.J. May 29, 1987), *reprinted in* JA at 182–83. Indeed, the factual record before the district court seemed to indicate that the relationship was one of equal bargaining power and reflected two parties engaged in the common pursuit of a shared goal. The sales meetings held at Fidelco's locations and the advertising and promotional materials, for example, demonstrated no more than cooperation in selling compressors. These sales meetings were not mandatory training for Fidelco's employees, nor was there a Colt-mandated method for selling the product. In addition, the advertising and promotional materials provided to Fidelco by Colt were only suggested, not required. Finally, while the shared costs aspect of yellow-page advertising at first blush suggests a closer relationship, that fact was not borne out, inasmuch as Colt did not require or specify any particular advertising. In sum, Fidelco failed to establish that it was subject to the whim, direction and control of a

more powerful entity whose withdrawal from the relationship would shock a court's sense of equity.

Fidelco suggests that Colt's monitoring of Fidelco's financial performance nonetheless demonstrated control over it as a franchisee. The agreement, in paragraph six (6), provided that "[d]istributor shall furnish satisfactory evidence of financial responsibility upon request by Quincy Compressor's Credit Department, but not less than annually." JA at 34. As the district court noted, however, Colt required proof of financial responsibility as one of its standard contract provisions; that practice made sense in this context, where the distributorship agreement contemplated sales to Fidelco on credit.

Colt did not set for Fidelco the sales quotas that a franchisor usually sets for its franchisees. *Carlos v. Philips Business Sys.*, 556 F.Supp. 769, 772 (E.D.N.Y.) (applying New Jersey and Connecticut law), *aff'd without published opinion*, 742 F.2d 1432 (2d Cir.1983) (table). Their sales goals, far from demonstrating control by Colt, were instead an example of the cooperative nature of the Colt–Fidelco relationship. An affidavit submitted by Colt to the district court explained as follows:

> 1987 SALES GOALS AND % CHANGE: These fields are to be *filled in by you and our District Representative during your meeting.* They should be realistic, and yet challenging goals; *established on the basis of your plans* for promoting Quincy in 1987.

*Colt Indus., Inc.*, No. 87–1347, Mem.Op. at 23 (D.N.J. May 29, 1987) (district court's emphases), *reprinted in* JA at 188. As the district court stated "[w]ithout question, if these are quotas, they are *self-imposed.*" *Id.* at 23, *reprinted in* JA at 188 (emphasis supplied).

Finally, we note that, although the agreements provided for warranty service by Fidelco, the fact that a distributor provides warranty service, standing alone, does not create a community of interest within the contemplation of the New Jersey statute. *Neptune*, 190 N.J.Super. at 167, 462 A.2d at 603.

## III.

For the foregoing reasons, we will affirm the district court's denial of the motion for a preliminary injunction.

ROSENN, Circuit Judge, dissenting.

I respectfully dissent. Unlike the majority, I believe that the New Jersey Franchise Practices Act encompasses the distributorship agreement[1] and accordingly, that the district court erred in holding that the defendants "have failed to demonstrate a reasonable probability of success on the merits of their claim that Fidelco was a Quincy franchisee." Thus, I would reverse and remand to the district court for further proceedings consistent with this opinion.

## I.

The New Jersey Franchise Practices Act defines a franchise as a "written arrangement for a definite or indefinite period, in which one person grants to another person a license to use a trade name ... and in which there is a community of interest in the marketing of goods and services...."[2]

---

1. This litigation is brought under the diversity statute, 28 U.S.C. § 1332(a). The parties and the district court have applied New Jersey law. We do the same.

2. The scope of the Act is further limited by § 56:10–4:

> This act applies only to a franchise ... (1) the performance of which contemplates or requires the franchisee to establish or maintain a place of business within the State of New Jersey, (2) where gross sales of products or services between the franchisor and franchisee ... shall have exceeded $35,000.00 for the 12 months next preceding the institution

of suit pursuant to this act, and (3) where more than 20% of the franchisee's gross sales are intended to be or are derived from such franchise.

The district court found that Fidelco had satisfied the first two requirements of § 56:10–4. With respect to the third element, however, the court observed that Fidelco had employed a rather circuitous method of demonstrating that it derived at least 20% of its gross sales from Colt. For the purposes of this opinion, I assume, as did the district court, that Fidelco's figures are accurate. Any continuing controver-

N.J.Stat.Ann. 56:10–3(a). I shall initially address the majority's holding that the distributorship agreement failed to grant Fidelco a license to use the Quincy trade name.

### A. The License.

Of the few precedents that have attempted to illuminate the requisites of the New Jersey Franchise Act, *Neptune T.V. & Appliance Service v. Litton Microwave, Etc.*, 190 N.J.Super. 153, 462 A.2d 595 (App.Div. 1983), is the most recent and perhaps the most instructive. In *Neptune*, the appellate division considered whether a written service contract between Neptune, a repairer of commercial appliances, and Litton, a manufacturer of microwave ovens, constituted a franchise within the meaning of the Act. *Id.* Pursuant to the agreement, Neptune was designated as an "authorized Litton service source" and required to repair Litton ovens both during and after the warranty period.[3] *Id.* Moreover, the contract permitted Neptune to represent itself as an authorized service source in its advertising, letterheads, calling cards, and service vehicle markings.

In determining whether the agreement conferred a license upon Neptune to use Litton's trademark, the court asserted that the limited use by a party of another's tradename in its own business advertising does not *ipso facto* constitute a license within the intendment of the Franchise Act. *Id.* at 599. Instead, the court noted that:

> [A] hallmark of the franchise relationship is the use of another's trade name in

such a manner as to create a reasonable belief on the part of the consuming public that there is a connection between the trade name licensor and licensee by which the licensor vouches, as it were, for the activity of the licensee in respect of the subject of the trade name.

*Id.* (citations omitted). Observing that Neptune's status as a service center permitted the consuming public to expect a "quality controlled service authorized by Litton itself," the court concluded that the agreement constituted a license to use Litton's tradename.

Relying principally upon *Neptune* and *Finlay & Associates v. Borg Warner*, 146 N.J.Super. 210, 369 A.2d 541 (Super.Ct. Law Div.1976), the district court in the present case held that the distributorship agreement failed to confer a license upon Fidelco to use the Quincy tradename.[4] Curiously, the district court's attempt to distinguish *Neptune* from the facts before it focused upon the absence of a warranty service provision in the Fidelco–Colt agreement:

> Unlike *Neptune*, the agreements between Colt and Fidelco do not contain the elaborate and detailed specifications for providing warranty service found in the *Finlay* case. On the contrary, in the instant case the contractual provision granting use of Colt's marks does not even mention service. This is a critical distinction when one considers that the New Jersey act defines a franchise as a "written agreement ... to ... license ... use [of] a trade name...." N.J.Stat. Ann. 56:10–3(a).

sy regarding this issue can easily be resolved during discovery.

**3.** The contract additionally incorporated the terms and conditions of the Litton Service Policy and Procedural Guide, a manual containing detailed provisions regarding the performance of warranty work. 462 A.2d at 597.

**4.** Paragraph 16 of the distributorship agreement precluded Fidelco from using the relevant tradename as part of its business title but permitted the defendant to display the Quincy trademark in a manner consistent with plaintiff's advertising policies:

The words "Quincy Compressor" and/or any parts of said name or trademarks of Quincy Compressor, or of Colt Industries, its subsidiaries and affiliates or any simulation thereof will not be used as part of Distributor's business name; but, nevertheless, [Fidelco] may display "Quincy Compressor" in a manner consistent with Quincy Compressor advertising policies as part of advertising of the product and indicating that [Fidelco] is a Distributor of Quincy Compressor products covered by this Agreement....

In essence, the district court has transformed the contractual duty to perform warranty repair service into a prerequisite for a trademark license. Nothing in *Neptune* suggests such a narrow reading of the New Jersey Franchise Act. A licensor may create a reasonable belief on the part of the consuming public that there is a connection between itself and a licensee in any one of a number of ways, the performance of warranty repair service being only one. Notably, *Neptune* involved an attempt by an appliance *repairer* to enjoin the termination of an authorized *service* contract. Because repair service was the primary incident of the parties' agreement, it is not surprising that the *Neptune* court fixated upon it in determining the existence of a trademark license. However, *Neptune's* "reasonable belief" test applies to contexts where, as here, repair service is not the predominant element of a contractual relationship. Importantly, the distributorship agreement between Fidelco and Colt was primarily concerned with the marketing of Quincy compressors and replacement parts.[5] I therefore conclude that the district court's imposition of a warranty service requirement constituted an error of law.

In affirming the order of the district court, the majority observes that "Fidelco could use the Quincy name only in a limited sense and that the Quincy brand name could not be used in Fidelco's business name." Maj. at 120. *See Finlay*, 369 A.2d at 546. The majority concludes: "In our view, if this limited agreement constitutes a license to use a trademark, then any business selling a name brand would, under New Jersey law, necessarily be considered as holding a license." I disagree.

In *Neptune*, the court implicitly rejected the notion that the issuance of a trademark license is conditioned on the franchisee's ability to use the franchisor's trade name in the former's business title. 462 A.2d at 598–99. The district court itself observed that "the continuing validity of [Finlay's] ... rather narrow definition of 'license' is somewhat cast into doubt by the subsequent decision of the appellate division in *Neptune*...." Although the majority also explicitly recognized *Finlay's* lack of continuing vitality, it nonetheless relied upon it in rejecting Fidelco's claim. Maj. at 119–120. Inexplicably, the majority completely ignores *Neptune's* test for determining the existence of a license—whether a trade name is used "in such a manner as to create a reasonable belief on the part of the consuming public that there is a connection between the trade name licensor and licensee...." 462 A.2d at 599. Moreover, both the district court and the majority ignored the impact of considerable evidence demonstrating that Colt indeed "vouched for the activity" of Fidelco.[6] *See id.* at 599. The district court found that Colt representatives would personally contact Fidelco customers in an effort to close sales; that Colt representatives would personally refer sales to Fidelco; that Colt and Fidelco jointly paid for advertising of Quincy products; and most importantly, that Fidelco in fact performed warranty service pursuant to the 1985 letter agreement.[7] Accordingly, I conclude that it was error to hold that Fidelco did not have a license to use the Quincy tradename. *See Tustin v. Heckler*, 749 F.2d 1055, 1060 (3d Cir.1984).

#### B. Community of Interest.

In addition to its comprehensive articulation of the Franchise Act's license require-

---

5. Even if the performance of repair service was a pre-condition for the issuance of a trademark license, reversal would still be appropriate. It is undisputed that a 1985 letter agreement between Colt and Fidelco granted the latter the right to perform repair service. Fidelco continued to perform repair service pursuant to the contract until Colt's termination of the distributorship agreement.

6. Fidelco served as Colt's sole distributor in Connecticut and in Northern New Jersey. The remainder of New Jersey, however, was served by another distributor.

7. Although it is not a precondition for the grant of a trademark license, the right to perform warranty service is relevant to the issue of whether a franchisor vouched for the activity of a putative franchisee. *See Neptune*, 462 A.2d at 599.

ment, *Neptune* endeavored to define the elusive notion of a "community of interest." Observing that the Act itself had failed to imbue the phrase with any substantive content, the *Neptune* court examined franchise acts from other jurisdictions. 462 A.2d at 599–600. Initially, the court observed that "franchising is essentially a method of doing business or a method of distributing which combines the advantages of an integrated corporate network with those advantages inherent in individual business proprietorships." *Id.* at 600. The court proceeded to note the manifestations of interdependence characteristic of the franchise relationship. The franchisor, it observed, is able to market a potentially successful product without expending the capital, manpower, or organization necessary to develop it. In addition to utilizing the franchisee's capital and labor, the franchisor also avoids "the inefficiencies and costs of centralized management and control of a large and geographically diverse organization." *Id.* The franchisee, on the other hand, acquires an instant public reputation based upon the good will established by other franchises. Moreover, the franchisee also benefits from the franchisor's "standardized management system, its training, guidance, and supervision." *Id.* The *Neptune* court concluded that a franchise relationship is:

> [B]ased on the complex of mutual and continuing advantages which induced the franchisor to reach his ultimate consumer through entities other than his own which, although legally separate, are nevertheless economically dependent upon him.

*Id.* at 601.

Purporting to rely upon *Neptune*'s "continuing advantage and interdependence" test, the district court held, and the majority agrees, that the distributorship agreement in the present case did not contain the requisite community of interest. In order to support their respective holdings, both courts relied, in part, upon *Grand Light & Supply Co. v. Honeywell, Inc.*, 771 F.2d

672 (2d Cir.1985), a Second Circuit opinion construing the Connecticut Franchise Act. Recognizing the dangers inherent in overextending the scope of the Connecticut Act, *Grand Light* asserted that the franchisor's "control" of the franchisee is the essential precondition of the franchise relationship. *Id.* at 678. Among the indicia of control noted by the court were the "franchisor's auditing of books and inspection of premises, control of lighting, employee uniforms, prices, trading stamps and hiring, establishing of sales quotas and management training and financial support." *Id.*

Interpreting *Neptune*'s recognition of a franchisee's vulnerability to unconscionable loss as an invitation to adopt *Grand Light*'s "control test," the district court in the present case observed:

> What defendants have failed to demonstrate is that this particular distributor is subject to the whim, direction, and control of a more powerful entity whose withdrawal from the relationship would shock the court's sense of equity.

*See Neptune*, 462 A.2d at 601. Noting that Colt exercises no control over the training, hiring, number, or qualifications of Fidelco employees, the court concluded that the agreement failed to create a community of interest.[8] Similarly, the majority predicates its affirmance of the district court's holding on the fact that "Fidelco failed to establish that it was subject to the whim, direction and control of a more powerful entity...." Maj. at 120. I conclude that the majority's and the district court's reliance on *Grand Light*'s control test constituted an error of law.

Initially, I note that the control test is predicated upon a reading of the Connecticut rather than upon the New Jersey Franchise Act. Unlike the New Jersey Act, the Connecticut statute *does not* even contain a "community of interest" requirement:

> (b) Franchise means an oral or written agreement or arrangement in which (1) a franchisee is granted the right to engage in the business of offering, selling or

8. Considering Colt's and Fidelco's sharing of advertising costs, the court similarly noted that

"Colt does not *specify nor require* any particular advertising" (emphasis added).

distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor ...; and (2) the operation of a franchisee's business pursuant to such a plan or system is substantially associated with the franchisor's trademark, service make, trade name, logotype, advertising or other commercial symbol designating the franchisor or its affiliate....

Conn.Gen.Stat. § 42–133e(b). As the district court observed, "Connecticut's statutory definition of a franchise ... amounts to a less inclusive definition than that found in the New Jersey Act."[9] Arguably, Connecticut's narrow statutory definition of a franchise supports the Second Circuit's assertion of a control test.[10] However, nothing in either the New Jersey Act or in *Neptune* itself contemplates the degree of franchisor control adopted by the majority in the present case. The New Jersey Act simply does not contain language comparable to Connecticut's requirement that a franchisee adopt "a marketing plan or system prescribed in substantial part by a franchisor." Moreover, *Neptune's* "mutual advantage" standard requires a franchise relationship characterized by interdependence rather than by control. Thus, rather than sanction adoption of the control test, *Neptune's* reference to an "unconscionable loss" merely reflects the appellate division's recognition that a franchisee is generally reliant upon a franchisor for its economic well being.

In the instant case, Colt markets its Quincy products exclusively through distributors who are required to maintain both physical facilities in their primary areas of responsibility and adequate levels of inventory. Colt's exclusive reliance on distributors to market its products strongly suggests a conventional franchise relationship. More specifically, as a condition of its agreement, Colt's employees inspected Fidelco's New Jersey facility and insisted that it be upgraded to adequately display and service Quincy products. From January 1986 through March 1987, the parties engaged in a series of cooperative efforts designed to increase sales of Quincy products. Colt representatives conducted sales meetings at Fidelco facilities at which new products were introduced, technical questions were answered, and product differences were explained. In a December 15, 1986 correspondence, Colt emphasized the team relationship between it and Fidelco, stating: "We have many plans that will make this next year very successful for us and our distributors ... the *Quincy team*. To be the best, we need to *work together closely*" (emphasis added). I believe that these facts demonstrate a community of interest between the parties.

Finally, in deciding that Fidelco was not entitled to the Franchise Act's protection, the district court characterized the defendant as an "industrial supermarket" that sells "at least eight different brands of compressors." However, § 56:10–4 of the Act requires, among other things, that a franchisee derive at least 20% of its gross sales and $35,000 in its revenues from the franchisor. To the extent that Fidelco complies with these statutory requirements, its status as an "industrial supermarket" is irrelevant.

Based on the preceding analysis, I would reverse the order of the district court and remand the case for further proceedings consistent with this opinion.

---

**9.** It is not clear how the district court could possibly have recognized this distinction between the Connecticut and New Jersey Acts and yet have adopted the *Grand Light* test.

**10.** I do not attempt to determine whether the Connecticut Distributorship Agreement between Colt and Fidelco constitutes a franchise under the Connecticut Act.