Alvin R. **HARRELL**,
Plaintiff–Appellant,

v.

Otis R. **BOWEN**, M.D., Secretary of
Health and Human Services,
Defendant–Appellee.

No. 88–1377
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 16, 1988.

Mary Ellen Phelps, Austin, Tex., for plaintiff-appellant.

James W. Jennings, Jr., Asst. U.S. Atty., Mrs. Helen M. Eversberg, U.S. Atty., San Antonio, Tex., Joseph B. Liken, Asst. Reg. Counsel, U.S. Dept. of HHS, Dallas, Tex., for defendant-appellee.

Before POLITZ, KING and SMITH, Circuit Judges.

PER CURIAM:

Plaintiff Alvin R. Harrell ("Harrell") appeals an order by the district court granting the Secretary of Health and Human Services' ("Secretary") motion for summary judgment and affirming the Secretary's denial of Harrell's claim for disability benefits and supplemental security income ("SSI"). We find that the Secretary's decision to deny benefits to Harrell is supported by substantial evidence and consequently, we affirm.

I.

At the time of the administrative hearing determining Harrell's eligibility for disability benefits, Harrell was forty-eight years old, stood five feet eight inches, weighed 160 pounds, and possessed a twelfth grade education with a high school degree. Harrell previously worked fourteen years as an inventory management specialist for the United States Air Force until 1974. In 1971, Harrell fell and hurt his back while

he was stationed in Thailand. He was hospitalized for six weeks and then transferred back to the United States. He had two back surgeries in 1972, one in 1973 and several kidney surgeries after 1981.[1] Harrell seeks disability due to his back injury and problems with kidney stones. Harrell previously received disability under Title II from April 1973 until February 1982. An administrative law judge ("ALJ") upheld the cessation of his disability on January 19, 1983, finding that Harrell was capable of light work activity. A federal district judge affirmed this decision on July 30, 1984 and this determination was not further appealed.

Harrell, represented by counsel, testified at the hearing that he is able to drive 30-40 minutes at a time without stopping. He washes dishes occasionally, does "a little bit" of housework, uses a riding lawn mower and walks about one half mile without difficulty. He visits friends and neighbors when they come by and attends church sporadically. Harrell stated that he has difficulty handling some personal needs and in sleeping. During the day his main activities are reading and watching television. He has received 100% disability payment from the Veterans Administration ("VA") since 1975. Harrell complained of pain in his back, kidneys, knees, face and testicles. He is currently using a TENS unit daily in lieu of pain medication. His wife essentially corroborated this testimony.

The medical records subsequent to January 19, 1983, are voluminous.[2] February 12, 1983, Harrell was admitted to the VA Hospital in Big Spring, Texas, complaining of kidney stones and pain in his right flank and right testicle. An intravenous pyelogram (IVP) taken on February 11, 1983, produced normal results. The lumbar spine showed mild degenerative changes. The IVP showed stones in the kidneys but otherwise both kidneys were functioning well and draining to the bladder. There were no obstruction or filling defects. On February 13, 1983, Dr. Sand noted that the testicle and epididymis revealed no swelling or tenderness. Harrell was advised to go home on February 14, 1983. He refused to follow the instructions of bed rest, was abusive to the attending physician and left the hospital February 13, 1983, making further lab work impossible.

On May 20, 1983, Harrell entered a VA Hospital in Temple, Texas, complaining of right kidney problems and testicular pain. An IVP confirmed both right and left non-obstructing kidney stones. The right kidney stones were removed on June 1, 1983 and Harrell was discharged on June 8, 1983.

On August 4, 1983, Harrell saw Dr. Scott Coffield, a urologist. Dr. Coffield noted no evidence of urinary tract problems from laboratory testing. The examination revealed a normal penis and normal testes, although the left was smaller than the right. The right testis was tender to simple palpatation but no pain was elicited by flexion of the trunk or extension of the spinal column. Dr. Coffield concluded that Harrell suffered from orchialgia (pain in a testis) which was likely related to nerve entrapment or inflammation due to pre-existing surgical treatment. On August 14, 1983, a CT scan and excretory urogram were performed showing no major abnormalities. On August 24, 1983, Dr. Elizabeth Rutledge requested that additional urine/semen cultures be checked, and stated "will somewhat reluctantly think about right epididymectomy (testis removal) in future, failing other alternatives."

On December 5, neurologist, N. Christoff, M.D., examined Harrell for complaints of facial numbness. Dr. Christoff found evidence of radiating pain on the right side and recurrent left face, shoulder and arm pain, cause unknown. The only objective finding was some trigeminal sensory loss.

---

1. The medical evidence reveals that Harrell's first back surgery removed a lumbar disc, the second removed scar tissue and the third was a fusion.

2. Although there are numerous medical records which predate the cessation of benefits on January 19, 1983, for reasons more fully discussed *infra*, we are concerned only with those after January 19, 1983.

Dr. Christoff diagnosed Harrell's condition as lumbosacral radiculpathy (disease of the nerve roots) due to adhesions and scarring. On December 5, 1983, Harrell underwent a skull series performed by Dr. J.T. Davis who noted: "very questionable abnormality of the sella turcica.... The skull is otherwise normal." In December of 1983 and January of 1984, electromyographic (EMG) and nerve conduction studies were performed and no abnormal results were reported. Due to persistent symptoms, Harrell underwent two nerve block injections in March of 1984 and a third in January of 1985. Shortly before the first of these injections, it was noted that Harrell had normal muscular condition, normal deep tendon reflexes, and virtually normal sensation in both legs. Flexion and extension x-rays taken in September, 1984, indicated "normal motion in the upper and mid lumbar area and no motion at L5–S1" where surgical fusion was previously performed. Oblique views showed no spondylolysis and normal facet joints. On November 10, 1984, Harrell had x-rays taken of his knees due to "swelling and pain." However, there was no evidence of fracture, arthritis or other abnormality and the knee was determined "normal."

Harrell's complaints of chest pain in February, 1985, resulted in a treadmill stress test. Harrell was exercised for nine and one half minutes and the test produced completely normal results. No chest pain was experienced and x-rays showed clear lung fields and a heart size within normal limits. There were no gross bony abnormalities, the ventricles were normal, no mass effect and no hemorrhage or infarction was noted.

Harrell was admitted to the Audie Murphy VA Hospital in San Antonio on February 24, 1985. An extensive examination of his lower extremities revealed "no significant acute changes ... which would be suggestive of new radiculpathy," and there was "[n]o evidence of perephiral neuropathy." Hospital tests in May of 1985 revealed spinal stenoris (narrowing) at No.

T4 lesion, not accompanied by any bony lesions and surgery was not recommended.

On June 24, 1985, Harrell entered the VA hospital for a follow-up genitourinary examination. An IVP revealed an enlarged prostate, but there were no other abnormalities. On August 26, 1985, Harrell was rehospitalized complaining of testicular pain, although neurological and cystoscopic examinations failed to reveal an origin for these complaints. Harrell was released four days later with no medications but was instructed to return for two out-patient examinations.

On September 9, 1985, both Harrell and his wife were seen by a psychiatrist who determined that Harrell had a tendency to "develop physical symptoms as [a] reaction to mental stress." The doctor suggested that chemotherapy should be considered and explained the effects and side effects.

Harrell had several follow-up clinical visits in 1986. An IVP taken on January 24, 1986, produced normal results and a cystoscopic examination in April, 1986, revealed no abnormalities. On May 5, 1986, Harrell was "extremely jumpy" on palpation of the right testicular area, and the diagnostic impression was chronic pain syndrome of that area. The record also contains several pages of lay testimonials from family and friends on Harrell's behalf and a "pain diary" covering August 13, 1985, shortly after his current application, to June 25, 1986, the day before the administrative hearing.

After considering the evidence, the ALJ concluded that Harrell was unable to perform his past relevant work as a supply sergeant but that he had the residual functional capacity to perform the physical exertion requirements for light work.[3]

Following the current denial of benefits by the ALJ, the Social Security Administration (SSA) Appeals Council denied review, rendering the ALJ's decision the final decision of the Secretary. Harrell then sought review of the Secretary's decision in federal district court. The matter was referred to a magistrate who, on March 8, 1988,

---

3. The ALJ refused to reopen Harrell's previous cessation decision which was ceased on January 19, 1983, and affirmed by the district court on July 30, 1984, without appeal.

issued a report recommending that the Secretary's decision be affirmed. The district court adopted the magistrate's recommendation and entered judgment accordingly on May 19, 1988. Harrell now appeals.

## II.

In reviewing the Secretary's decision to deny disability and SSI benefits,[4] this court is "limited to a determination that the Secretary's decision was supported by substantial evidence existing in the record as a whole and that no errors of law were made." *Neal v. Bowen*, 829 F.2d 528, 530 (5th Cir.1987). In applying the "substantial evidence" standard, we must carefully scrutinize the record to determine if, in fact, such evidence is present. However, we may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute our judgment for the Secretary's, even if the evidence preponderates against the Secretary's decision.[5] *Id.; Fields v. Bowen*, 805 F.2d 1168, 1169 (5th Cir.1986). Substantial evidence means more than a scintilla, but less than a preponderance and is:

> [S]uch relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."

*Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir.1983) (citations omitted).

An individual applying for disability and SSI benefits bears the initial burden of proving that he is disabled for purposes of the Social Security Act.[6] *Neal*, 829 F.2d at 530; *Fields*, 805 F.2d at 1169. Once the claimant satisfies his initial burden, the Secretary then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and therefore, not disabled. *Neal*, 829 F.2d at 530. In determining whether or not a claimant is capable of performing substantial gainful activity, the Secretary utilizes a five-step sequential procedure set forth in 20 C.F.R. § 404.1520(b)–(f) (1988):

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

A finding that a claimant is disabled or not disabled at any point in the five-step process is conclusive and terminates the Secretary's analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 n. 15 (5th Cir.1987); *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984).

---

**4.** The scope of judicial review of a decision under the Supplemental Security Income Program is identical to that of a decision under the Social Security Disability Program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir.1985).

**5.** 42 U.S.C. § 405(g) (1983) provides that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive."

**6.** Title XVI of the Social Security Act, 42 U.S.C. § 1381, provides for supplemental security in-

come for the disabled. Title II of the Act provides for federal disability insurance benefits. The relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See Davis v. Heckler*, 759 F.2d 432, 435 n. 1 (5th Cir.1985); *Rivers v. Schweiker*, 684 F.2d 1144, 1146 n. 2 (5th Cir.1982); *Strickland v. Harris*, 615 F.2d 1103, 1105–06 (5th Cir.1980).

## III.

Harrell argues that this case is "an early termination of benefits case in which the administration guaranteed a review based on whether or not there was improvement...." Harrell alleges support for his contention in the following SSA teletype:

SUBJECT: Tustin, Et Al. v. Hecker—Action This teletype is intended to provide information ... the District Court ... certified a class including all persons nationwide who have had their social security disability benefits terminated for reasons having to do with the evaluation of a medical condition pursuant to a periodic review ... and who presently have a claim appealing said termination in a United States District Court ... These cases are individual cases pending in court.... The Court ordered the Secretary to identify class members and to restore disability benefit payments retroactive to the date of each class member's termination.... The District court stayed the payment of benefits pending the agency's identification of class members. The identification will be handled at central office. However, once individuals are identified, absent a stay or reversal of the District Court's Order, payments are to commence September 4, 1984. We will provide additional instructions after concerning benefit status. Should you get any inquiries from individuals who believe they are entitled to relief pursuant to the Tustin Order, you should explain the stay of judgment decision concerning benefit payments. Take identifying information from anyone who believes he/she is covered by the Order and advise that SSA will contact him/her later.

The handwritten note on the bottom of the teletype said:

8–6–84 Alvin R. Harrell was in the D.O. this date. If he does not fall under this category we will protect him from re-filing to this date.

Marva Lawso
Claims Representative

■ Harrell contends that the Secretary's January 19, 1983, decision upholding the cessation of his previous period of disability was improper. This decision was upheld by a district judge on July 30, 1984. There is no indication in the record that Harrell sought further judicial review of this decision. Furthermore, in his request for a hearing, filed December 4, 1985, Harrell checked the box "Initial Entitlement" rather than "Termination or other Post–Entitlement Action." The hearing transcript reveals that only Harrell's application of June, 1985, and his condition subsequent to January, 1983, were at issue. The ALJ considered only the period since January 19, 1983, in his decision. Harrell's suggestion that the SSA memorandum reopens the termination issue is unpersuasive because it was written after the district court terminated Harrell's benefits.

Harrell's failure to seek review of the previous district court decision precludes our consideration of his contention that *Tustin v. Heckler*, 591 F.Supp. 1049 (D.N.J. 1984), is applicable to the case at bar. In 1980, Congress amended the Social Security Act to require review of the eligibility of each beneficiary at least once every three years. 42 U.S.C. § 421(i) (1982). Initially, the Secretary adopted a standard of review that required termination of benefits if current evidence supported a finding that the person was able to engage in substantial gainful activity. *See* 45 Fed.Reg. 55,566, 55,568 (Aug. 20, 1980). Several courts, however, found this standard improper, but disagreed as to the appropriate standard of review.[7] Responding to these differing

---

7. *See, e.g., DeLeon v. Secretary of Health and Human Services,* 734 F.2d 930 (2d Cir.1984) (The Secretary's "not currently disabled" standard is not authorized by the Act or regulations; the "medical improvement" standard of finding that the recipient's condition has improved to where he is no longer disabled or that the initial finding of disability was erroneous is the proper standard.); *Kuzmin v. Schweiker,* 714 F.2d 1233

(3rd Cir.1983) (In a termination proceeding, once the claimant has introduced evidence that her condition remains essentially the same, the claimant has the presumption that her condition remains disabling and then the Secretary has the burden on going forward with evidence of medical improvement to rebut the presumption.); *Dotson v. Schweiker,* 719 F.2d 80 (4th Cir.1983) (An initial determination of disability

standards, Congress established a uniform standard for disability reviews, signed into law October 9, 1984. The uniform standard provides that the Secretary may terminate disability benefits because the person is no longer disabled *only* if there is substantial evidence demonstrating that (i) there has been medical improvement in the individual's impairment and (ii) the individual is now able to engage in substantial gainful activity. Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423. On May 22, 1984, the Secretary announced a Ruling that the SSA would suspend the disability review process until the legislation was enacted and implemented on October 9, 1984. This Ruling did not rescind adverse decisions and restore benefits for those claims that were not properly pending administratively or those cases pending in the Federal Courts for review of a final agency decision. The district court in *Tustin* issued a class certification and preliminary injunction to temporarily restore terminated benefits to those persons having appeals of terminations pending before the United States courts as well as those persons with cases still pending at the administrative level, citing equal protection as the basis for this action.

The Third Circuit vacated the preliminary injunction in *Tustin v. Heckler*, 749 F.2d 1055 (3rd Cir.1984), noting that:

Although the equal protection component of the due process clause ... does not require that the government treat all persons alike ... [it] does ensure that, when the government distinguishes among individuals or groups, the distinctions must be sufficiently justified. [footnote omitted] ... " '[A] State does not violate the Equal Protection Clause merely because the classifications made by the law are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practise it results in some inequity." [citations omitted]. The government in Social Welfare Legislation only needs to

classify the persons it affects in a manner *rationally related* to legitimate governmental objectives.' "

*Id.* at 1061 (emphasis added). The court held that the Secretary acted rationally when concluding that a general waiver would have unnecessarily burdened the SSA and the courts. *Id.* at 1062–63.

Exhaustion of administrative remedies ensures that the Secretary has a chance to develop fully her position in a case before she must defend that position in the courts, and that the judiciary has access to a detailed administrative record that will facilitate meaningful judicial review. ... unlike persons with claims subject to additional review in the administrative agency, persons with final administrative decisions have both the clear statutory right to appeal the disability determination in a federal court and the well-developed record that makes the appeal meaningful. Once in the courts, these claimants may (or may not) win a remand for further proceedings, or an outright reversal of the Secretary that directs an award of benefits.

Harrell's contention that his case was pending at the time of the enactment of the Social Security Disability Benefits Reform Act of 1984 is made for the first time on appeal. The unappealed affirmance of the Secretary's decision by the district court was issued *prior* to the Reform Act's cut-off date of September 19, 1984, and thus was not subject to that Act's automatic remand provisions.

The decision of the Secretary terminating Harrell's disability benefits became final before the Benefits Reform Act was enacted. The district court affirmed the Secretary's decision terminating Harrell's benefits on July 30, 1984. When Harrell failed to appeal that decision, it became final. The Benefits Reform Act's requirement of finding medical improvement before termination of disability benefits does not apply to new applications for disability benefits. *Richardson v. Bowen*, 807 F.2d 444, 446

gives rise to a presumption at the second hearing that the claimant is still disabled and the

Secretary is then required to come forth with evidence to rebut such presumption.).

(5th Cir.1987). *See also Torres v. Secretary of Health and Human Servs.*, 845 F.2d 1136, 1139 (1st Cir.1988):

... "the new medical improvement standard only applies prospectively to review determinations by the Secretary made after the Reform Act's enactment on October 9, 1984. The termination decision here became final before that date and was affirmed by the district court on March 28, 1984. Since subsequent judicial review was not sought, no request for judicial review was pending which would implicate the exceptions stated in §§ 2(d)(2)(C) and (D). Section 2 of the Reform Act does not authorize reopenings and does not provide an independent jurisdictional basis to review the Secretary's refusal to reopen a prior decision.

Furthermore, in light of the reversal of the district court's *Tustin* order, the notation by the SSA employee that Harrell was to be protected from refiling to August 6, 1984 only obligated the Secretary to consider that date as the starting point for any *subsequent* applications.

## IV.

The next issue is whether substantial evidence supports the Secretary's denial of disability and SSI benefits to Harrell. 42 U.S.C. § 423(d) states in part:

(1) The term "disability" means—

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; ...

(2) For purposes of paragraph (1)(A)—

(A) an individual ... shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

(3) For purposes of this subsection, a "physical or mental impairment" is an *impairment that results from anatomical, physiological or psychological abnormalties which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.*

42 U.S.C. §§ 423(d)(1)(A), (2)(A), (3) (1982) (emphasis added). Furthermore, the legislative history states that an unsupported medical conclusion as to impairment or disability is not sufficient to establish disability under the Act. It is clear that statements of the applicant or conclusions of others "do not establish the existence of disability for purposes of social security benefits based on disability unless they are supported by clinical or laboratory findings or other medically acceptable evidence confirming such statements or conclusions." S.Rep. No. 744, 90th Cong., 1st Sess. 46–50, *reprinted in* 1967 U.S.Code Cong. & Ad. News 2834, 2880–83. At issue here is the final step of the five-part process in 20 C.F.R. § 404.1520(f), involving a claimant's ability to do other work. The Secretary has the burden to show that Harrell's residual functional capacity, age, education and work experience allow him to perform work in the national economy. *Id.; Rivers v. Schweiker*, 684 F.2d 1144, 1150–53 (5th Cir.1982). The Secretary may satisfy this burden of proof by referring to the Medical–Vocational Guidelines of Appendix 2 of the regulations. *Heckler v. Campbell*, 461 U.S. 458, 470, 103 S.Ct. 1952, 1959, 76 L.Ed. 2d 66 (1983).

The ALJ concluded that Harrell was not disabled since January 19, 1983. Applying 20 C.F.R. § 404.1569 and 20 C.F.R. Part 404, Subpt. P, App. 2, Rule 202.21, a claimant aged 18–49 with a high school education, no demonstrated transferable skills

and the capacity for light work is deemed not disabled.

▐ Harrell argues that Rule 202.21 should not be mechanically applied to his claim. Under the regulations, individuals in the 18–49 age group are designated as "younger individual[s]." 20 C.F.R. § 404.1563. An individual in this age group who possesses the capacity for light work generally is considered not disabled. 20 C.F.R. § 404.1563(b) and App. 2, § 202.00. Harrell was 48 years old at the time of the hearing and had just turned 49 on the date of the Secretary's decision.[8] 20 C.F.R. § 404.1563(a) requires that the age classifications not be applied mechanically in borderline situations; however, "borderline" is not specifically defined, indicating that the Secretary has discretion in determining when a situation is "borderline." The Secretary's interpretations of his regulations deserves considerable deference in the absence of an obvious inconsistency between the interpretation and the language of the regulation in question. *Cieutat v. Bowen*, 824 F.2d 348, 351–53 (5th Cir.1987). Because the record clearly indicates that Harrell's age fit into the "younger individual" age category, the Secretary's decision is supported by substantial evidence.[9] Moreover, even if Harrell were in the 50–54 age category, a person with his education, work experience and functional capacity would still not be considered disabled. 20 C.F.R. Part 404, Subpt. P, App. 2, Rule 202.14.

▐ Harrell next attempts to argue that, due to the downturn of the local economy, the Secretary has failed to show that jobs are available to him. This tactic is foreclosed by 20 C.F.R. § 404.1566(c) which specifically excludes the lack of work in the local area, employer hiring practices, cyclical economic conditions, and the absence of job openings from consideration in determining an individual's work capacity. *See also Knott v. Califano*, 559 F.2d 279, 282 (5th Cir.1977). When, as here, "findings of fact are made as to the [plaintiff's] age, education, transferability of skills, work experience, and residual functional capacity, and these coincide with the criteria of a rule in the vocational regulations, that rule 'directs a conclusion as to whether the individual is or is not disabled.'" *Jones v. Heckler*, 702 F.2d 616, 622 (5th Cir.1983); 20 C.F.R. Part 404, Subpt. P, App. 2, Section 200.00(b). Therefore, if a claimant's characteristics match those of an Appendix 2 rule which directs a decision of not disabled, the Secretary may use this rule to establish the existence of jobs in the national economy by administrative notice. *Campbell*, 461 U.S. at 470, 103 S.Ct. at 1959. Accordingly, if Harrell's profile satisfies the criteria of Rule 202.21, the Secretary need not make an additional showing of the existence of jobs within his abilities. The inquiry then proceeds to the remaining criterion of Rule 202.21, Harrell's capacity to engage in light work.

The ALJ found that Harrell had no non-exertional limitations and that he had the residual functional capacity "to perform the full range of light work." In so doing, the ALJ explicitly considered whether Harrell's pain constituted a nonexertional limitation, and specifically concluded, that "the [plaintiff's] pain cannot be found to be so severe as to restrict him from performing light work activity. His allegations to the contrary may not be found credible."

Section 3(a)(1) of the Social Security Disability Benefits Reform Act provides:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined

---

8. The Secretary's decision was on October 24, 1986 while Harrell's birthday was October 21, 1986.

9. It is conceivable that the introduction of material evidence that the age classifications are inaccurate or misleading as applied to the plaintiff would prevent the Secretary from applying Appendix 2 to direct his decision. *Reeves v. Heckler*, 734 F.2d 519, 525 (11th Cir.1984). We have not decided this issue but intimated that had we adopted *Reeves*, we would continue to view the primary issue as the reasonableness of the Secretary's use of his discretion. *See Underwood v. Bowen*, 828 F.2d 1081, 1083 (5th Cir. 1987) (the Secretary's use of the age classifications on a forty-nine year old claimant was upheld despite a medical report suggesting that the claimant had prematurely aged).

in this Section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or symptoms alleged and which when considered with all evidence required to be furnished under this paragraph (including statements of the individual or her physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), which would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques ... must be considered in reaching a conclusion as to whether the individual is under a disability.[10]

■■■■ This circuit has held that pain, in and of itself, can be a disabling condition under the Act, but only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Hames v. Heckler,* 707 F.2d 162, 166 (5th Cir.1983); *Chaney v. Califano,* 588 F.2d 958, 960 (5th Cir.1978). The Secretary found that Harrell's subjective complaints of pain were not supported by the medical evidence. It must be remembered that "[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled." *Elzy v. Railroad Retirement Bd.,* 782 F.2d 1223, 1225 (5th Cir.1986); *Loya v. Heckler,* 707 F.2d 211, 215 (5th Cir.1983). The district court found substantial evidence to support the ALJ's decision:

It is obvious from the record that the [plaintiff's] pain allegations are significantly exaggerated (sic) as are many, if not most of the [plaintiff's] complaints. The [plaintiff's] complaints at the present

hearing were very similar to those considered by [ALJ] Martin when he issued his January 19, 1983 decision. At that time, he was found to be capable of light work activity, and this decision has been affirmed by the United States District Court. Although the [plaintiff] has made several recent hospital visits complaining of pain, perhaps with litigation in mind, and has received a very extensive workup, no significantly new problems have been found. The [plaintiff's] pain allegations shifted to testicular pain, but urological examinations, and a neurological examination showed no abnormalities whatsoever. A psychological component to the [plaintiff's] complaint was suggested, and appears to be somewhat confirmed on the basis of the MMPI, but although the [plaintiff] was referred to psychiatry, there appears to be no psychiatric diagnosis as such given. It, therefore, appears that no psychiatric impairment *per se* can be found. It is apparent viewing the [plaintiff's] notes and the numerous letters that he has had written for him, as well as the complaints of his wife, that there is a very significant secondary pain component to the [plaintiff's] pain complaints. It is equally obvious that the relatively sparse physical findings might support the existence of some relatively mild to moderate pain, but certainly not the extreme and unrelenting pain of which the [plaintiff] complains. It is also quite apparent, from the physical findings and the [plaintiff's] report of his daily activities, that the pain is much less severe than alleged. Testing, such as CT scans, EMGs, nerve conduction velocity tests, IVPs, and cytoscopes, have been largely negative. The stigmata often found in cases of severe, intractable pain are also absent. No signs of premature aging, weight loss, or disuse atrophy of a muscle, which is being kept almost constantly at rest to avoid the symptoms caused by usage, are present.

10. This standard is to be applied by the Secretary and by the courts in all disability determinations made prior to January 1, 1987, which involve allegations of pain. *See* § 3(a)(3) of the Social Security Disability Benefits Reform Act.

The medical-vocational rules are sufficient to meet the Secretary's burden when no nonexertional limitations are present. *Carter v. Heckler,* 712 F.2d 137, 142 (5th Cir.1983); *Dellolio v. Heckler,* 705 F.2d 123, 127 (5th Cir.1983). Under such circumstances, the testimony of a vocational expert is not required to substantiate the Secretary's position. *Carter,* 712 F.2d at 142.

Harrell argues that the Secretary's recognition that his impairments are severe and then disregarding the allegations of chronic pain are inconsistent and an abuse of discretion. The Secretary recognized that Harrell has "chronic pain syndrome" and degenerative disc disease. However, the dispute is whether, despite these impairments, Harrell can do light work.[11] Even if an impairment is deemed "severe" under the standard of *Stone v. Heckler,* 752 F.2d 1099 (5th Cir.1985), this fact does not require a remand when the Secretary has gone beyond the second step, as here, as not all "severe" impairments are disabling. *Shipley v. Secretary,* 812 F.2d 934, 935 (5th Cir.1987).

Harrell's attack on the ALJ's rejection of his 100% VA disability rating also is foreclosed by *Underwood v. Bowen,* 828 F.2d 1081 (5th Cir.1987). In *Underwood,* the court found that although the Secretary must consider the determinations of the VA and other agencies, such determinations are not dispositive, as the criteria applied by the VA and the Secretary vary. *Underwood,* 828 F.2d at 1083, *citing* 20 C.F.R. § 404.1504. *See also Pate v. Heckler,* 777 F.2d 1023, 1027 (5th Cir.1985) (the post-decision determination of another agency did not constitute good cause for a remand under 42 U.S.C. § 405(g) (1983)). Here, the ALJ expressly considered the VA rating and rejected it as "not well supported by objective evidence," at least as to the period since January 19, 1983. The evidence discussed below shows that the ALJ's assessment is supported by substantial evidence.

The ALJ properly determined that Harrell could engage in light work activity despite his complaints of functional limitations resulting from the aforementioned impairments. The ALJ found that these impairments were not "credible to the extent alleged." The Act, regulations and case law mandate that the Secretary require that subjective complaints be corroborated, at least in part, by objective medical findings. 42 U.S.C. § 423(d)(5)(A) (1985 Supp.); 20 C.F.R. § 404.1529; *Owens v. Heckler,* 770 F.2d 1276, 1281–82 (5th Cir. 1985).

The objective medical findings reveal that Harrell had three back surgeries before January 1983, and pain in the S1 area. However, subsequent EMG, nerve conduction testing and clinical examination produced virtually normal results and indicate that these radiating symptoms have little functional significance. Harrell demonstrated the ability to exercise for nine and one-half minutes on the 1985 treadmill test before experiencing significant back pain, thus indicating that he retained the capacity for at least 10 "METS" of energy expenditure, more than enough for the performance of light work actively despite his back problem.

Harrell also complained of testicular pain, but again, the objective findings of record reveal no disabling impairment. IVP, CT, and clinical testing have failed to produce evidence of a genitourinary abnormality other than an enlarged prostate gland. Even the kidney stones removed in June, 1983, did not obstruct the urinary tract. There are no objective findings for this pain except for the suggestion in August, 1983, that it results from nerve entrapment in the spinal column. This underlying cause does not preclude light work activity. There is record evidence that pain did not result from leg or back movements and thus presents no significant limitations in the range of motions.

Finally, Harrell suggests the existence of a psychological component to his pain. However, there is insufficient documenta-

11. Light work involves the lifting and carrying of 10–20 pounds and a substantial amount of sitting, standing, and walking. 20 C.F.R. § 404.1567(b).

tion to support this contention. The ALJ noted that no specific psychiatric diagnosis appears in the record. There is no evidence of any functional restriction resulting from a mental impairment in any of the medical reports. In fact, many of these reports refer to Harrell as alert and oriented. In the absence of a *medically determinable* mental impairment, the Secretary is not required to consider the effects of such an impairment on the claimant's work capacity. *Jones v. Bowen,* 829 F.2d 524, 526 (5th Cir.1987); *Fraga v. Bowen,* 810 F.2d 1296, 1305 (5th Cir.1987). Therefore, Harrell's assertion that he has an organic brain disorder which meets Section 12.03 of the Appendix I listings lacks any objective foundation.

The Secretary recognized that many of Harrell's friends and relatives wrote letters confirming his allegations of pain sufferage which Harrell and his wife further supported by their submission of a "pain diary." However, these writings show no more than the existence of a secondary pain component to Harrell's pain complaints. Supporting, objective findings are important to the disability determination because the observations of an individual, particularly a lay person, may be colored by sympathy for the affected relative or friend and influenced by that person's exaggeration of his limitation. *See Fitzsimmons v. Matthews,* 647 F.2d 862, 864 (8th Cir.1981).

Further, as the ALJ noted, these statements are often prepared in anticipation of litigation. The timing of the "pain diary" which began shortly after the current application was filed, and ended the day before the hearing, lends credence to this statement. The ALJ acted within his discretion in rejecting these statements and Harrell's pain diary in general.

### V.

Harrell has not shown an evidentiary basis for challenging the ALJ's factual finding that his profile matches that of Rule 202.21. He has failed to demonstrate any significant error of fact or of law in the ALJ's decision and therefore the Secretary is entitled to a judgment in his favor. *See Mays v. Bowen,* 837 F.2d 1362, 1364–65 (5th Cir.1988). There is no ground to remand this case.

The decision of the district court is AFFIRMED.