IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-50288
Summary Calendar
_____


JIMMY SALAZAR,

                                        Plaintiff-Appellant,

                        versus

SHIRLEY S. CHATER,
COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court for the
Western District of Texas
(CA-A-94-583)
_____

November 27, 1995

Before JOLLY, JONES, and STEWART, Circuit Judges.

PER CURIAM:[*]

     In February 1992, Jimmy Salazar applied for social security

disability insurance benefits, alleging an onset date of disability

of August 29, 1991.[1]   After his application was denied, Salazar

_____

     [*]Local Rule 47.5 provides:  "The publication of opinions that
have no precedential value and merely decide particular cases on
the basis of well-settled principles of law imposes needless
expense on the public and burdens on the legal profession."
Pursuant to that Rule, the court has determined that this opinion
should not be published.

     [1]The ALJ noted that Salazar had been awarded a prior closed
period of disability, which ended in August 1991 for a back injury
sustained in February 1988.

requested reconsideration, which was denied on October 6, 1992. Salazar requested a hearing before an administrative law judge ("ALJ").

The ALJ held a hearing on July 19, 1993. On October 27, 1993, the ALJ found that Salazar was not disabled. In reaching his decision, the ALJ relied on Salazar's testimony and reports of pain, reports by treating and consulting physicians, and on Social Security regulations. The Appeals Council denied Salazar's request for review of the ALJ's decision on June 23, 1993. The ALJ's decision became the final decision of the Commissioner of Social Security. Salazar sought judicial review of that decision. The parties consented to proceed before a magistrate judge. The magistrate judge affirmed the Commissioner's decision on April 6, 1995. Salazar filed a timely notice of appeal.

I

**Chronic Pain**

Salazar argues that "the ALJ erred in finding appellant has degenerative disc disease but failed to recognize that chronic pain was an ongoing diagnosis and was the condition being treated throughout the time after surgery. This oversight of the source of appellant's truly severe impairment is extremely significant." "The court below erred in not understanding that chronic pain is `constant, unremitting and unresponsive to treatment' by definition."

Pain constitutes a disabling condition under the Social Security Act only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." Harrell v. Bowen, 862 F.2d 471, 480 (5th Cir. 1988) (citation omitted). "The [Commissioner], not the courts, has the duty to weigh the evidence, resolve material conflicts in the evidence, and decide the case." Chaparro v. Bowen, 815 F.2d 1008, 1011 (5th Cir. 1987). The evaluation of a claimant's subjective symptoms is within the province of the ALJ who had an opportunity to observe the claimant. Harrell, 862 F.2d at 480. The ALJ "may properly challenge the credibility of a claimant who asserts he is disabled by pain." Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981).

The Social Security regulations provide for a two-step process to be used in evaluating whether subjective complaints of pain contribute to a finding of disability. 20 C.F.R. § 404.1529. For pain to contribute to a finding of disability, the claimant must first establish, by medical signs and laboratory findings, the presence of a medically determinable physical impairment which could reasonably be expected to produce the pain alleged. Once such an impairment is established, allegations about the intensity and persistence of pain must be considered in addition to the medical signs and laboratory findings in evaluating the impairment and the extent to which it affects the claimant's capacity for work. Id.; see also Pope v. Shalala, 998 F.2d 473, 482 (7th Cir. 1993).

Although the ALJ did not specifically label his findings under the two steps, his findings show that he did go through the process. The ALJ considered the medical evidence in the record and determined that "the pain experienced by the claimant is limiting, but not so limiting as to preclude his engaging in all substantial gainful activity." This shows that the ALJ found that Salazar did have a medically determinable impairment that could reasonably be expected to produce pain, but that he did not find the pain to exist to the extent alleged so as to disable Salazar from work. The fact that the ALJ considered Salazar's testimony regarding his activities shows that he did not stop at the threshold inquiry, but proceeded to the second step. See Carbone v. Sullivan, No. 91-1964 (1st Cir. Apr. 14, 1992), 1992 WL 75143 at *6 (unpublished) (consideration of activities showed complaints were not dismissed at threshold level).

After comparing the subjective complaints with the objective evidence, the ALJ found the subjective complaints to be not corroborated in severity, duration, or intensity. In doing so, he observed that Dr. Simonsen released Salazar for light work and determined that he had reached maximum medical improvement; examinations "showed only mild decreased range of motion and were otherwise normal"; Salazar took prescribed medication with no noted side effects; Salazar testified that he drives his wife to and from work and can take care of his personal needs, including fixing lunch; "[a]t the hearing, the claimant alleged constant burning

-4-

pain in the left side of his back and radiating into his legs. Yet medical reports do not contain any such complaints." The ALJ noted that the medical reports "noted nothing in the way of objective medical findings" and "continue to show virtually nothing in the way of objective findings to support allegations of constant disabling pain." The ALJ discredited Salazar's testimony regarding the degree of his pain because it was not supported by objective medical signs and findings and because his activities of daily living were inconsistent with his contentions.

Although the medical records do not indicate that Salazar complained about pain radiating down his leg as noted by the ALJ, the records show that Salazar consistently complained of lower back pain. The doctor continually attempted to relieve the pain by prescribing new drugs and dosages. In May 1991, the doctor recommended another surgery.

Salazar testified that when he had back surgery in 1988, the pain ranked a "ten" on the scale. He testified that he asked Dr. Simonsen "how would 50 or 20 percent I would come out of the hospital?" The doctor gave him only a "fair" chance of recovery. In the light of those odds, Salazar elected to live with the pain.

Salazar testified that he drives his wife 10 minutes to work and 10 minutes home. He can stand for about 20 minutes before his feet start getting numb. He can take care of his personal needs. He exercises under doctor's orders. Salazar ranked his pain as a six on a scale of one to ten with ten being "almost unbearable."

The pain "goes up to about seven or eight" when he is exercising, then goes back down when he stops.

The ALJ's finding that Salazar's pain was not disabling is, especially in the light of discrediting his testimony concerning the degree of pain, supported by substantial evidence.

II

**Past relevant work**

Salazar argues that the ALJ erred in finding that he could perform his past relevant work. To determine whether a claimant can perform past relevant work, the ALJ must access the physical demands of the job by considering the description of the work actually performed or as generally performed in the national economy. <u>Villa</u>, 895 F.2d at 1022. The ALJ considered Salazar's testimony describing the work he actually performed.

Salazar testified that in past work as a janitor cleaning offices he cleaned desks, took out trash (small office-type cans c. 20-25 lbs and larger cans from the kitchen), mopped, swept, and vacuumed. He stated that the trash and vacuuming would be the problem for him now. He testified that he sometimes had to pick up and carry up stairs vacuum cleaners that weighed about 50 pounds.

Vocational expert Teri Hewitt reviewed Salazar's records and testified at the hearing that Salazar's "janitorial work in office buildings was light and at the low end of semi-skilled."[2] Given

---

[2]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten

Salazar's limitations, the vocational expert said that his past janitorial job would still be possible with either medium or light exertional capacity.

The ALJ found that Salazar had "the residual functional capacity to perform work related activities except for work involving jobs greater than medium work as defined in the Regulations with the limitation that the work avoid twisting, sitting for prolonged periods of time and vibration (20 CFR 404.1545)." The ALJ found that Salazar's "past relevant work as janitor in a building did not require the performance of work related activities precluded by the above limitation[s] (20 CFR 404.1565)." The ALJ concluded that Salazar's "impairments do not prevent the claimant from performing his past relevant work."

Salazar does not dispute that he can do light to medium work with the described limitations. He argues that he could not do his former job with his limitations and says: "A janitor must sweep, mop, and vacuum, emptying garbage cans, cleaning sidewalks and mowing lawn. It is impossible to perform these duties without twisting. (Exhibit B)."

---

pounds." A job is in this category if it requires "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling up arm or leg controls." 20 C.F.R. § 404.1567(b).

"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

Exhibit B appears to be a page copied from the Dictionary of Occupational Titles, which reflects exertional requirements of work required of a janitor as performed in the national economy. This exhibit does not address Salazar's argument that the duties of a janitor cannot be performed without twisting. Salazar provides no authority to support this proposition. To accept Salazar's argument, we would have to take judicial notice that sweeping, mopping, etc., requires twisting.

However, the vocational expert did not address the question or provide evidence whether such duties could be performed in spite of a "no twisting" limitation. A vocational expert's opinion "is meaningless" unless there is adequate record evidence to support the assumptions made by the expert. Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994) (citing Gallant v. Heckler, 735 F.2d 1450, 1456 (9th Cir. 1984)).

Salazar argues that the ALJ erred finding that he could perform his past relevant work when Salazar's treating physician said that he could not. He argues that the ALJ did not give proper consideration to his treating physician's opinion that he could not return to his prior work.

Although the opinions of the treating physician ordinarily should be accorded considerable weight in determining disability, the opinions are not conclusive. Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994), cert. denied, 115 S.Ct. 1984 (1995). "[W]hen good cause is shown, less weight, little weight, or even no

weight may be given to the physician's testimony."  Id.  The ALJ may disregard statements that are "brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence."  Id. (internal quotations and citation omitted).

The Commissioner argues that the doctor's opinion that Salazar could not return to his prior relevant work conflicts with the doctor's releasing Salazar to perform light to medium work.  See Spellman v. Shalala, 1 F.3d 357, 364 (5th Cir. 1993) (Commissioner need not give controlling weight to treating physician's opinion if it is inconsistent with other evidence in the record).

The doctor's release to light to medium work is not inconsistent with his opinion that Salazar could not return to his past work.  Doctor Simonsen released Salazar to light to medium work, with the limitation that he not lift over 20-30 pounds and that he keep his back straight with no twisting.  Apparently the doctor determined that Salazar's past relevant work required movements outside these limitations.

The district court stated that Dr. Simonsen's opinion

> need not have been given great weight by the ALJ, as Dr. Simonsen was not qualified as a vocational expert. Houston v. Sullivan, 895 F.2d 1012, 1016 (5th Cir. 1989).  Although treating physicians often render such opinions, they are usually made for private insurance purposes and standing alone are of little legal effect.  In addition, Dr. Simonsen acknowledged in July 1991 that plaintiff had been released for "light medium work" (Tr. 119) and on December 18, 1991, he

                    released plaintiff for work with an industrial
                    back brace (Tr. 118).

The case cited does not stand for the proposition stated by district court.  See Houston, 895 F.2d at 1016.  Indeed, the case seems to support the opposite proposition.  See id. ("[E]ven if the vocational expert's testimony does suggest Houston can do only light work, the court need not have considered her testimony in this issue, because the vocational expert is not a medical expert qualified to testify as to Houston's medical impairments.") Research does not reveal caselaw showing how an ALJ should weigh medical and vocational expert testimony in this context.

However, it is the claimant's burden of proving that he cannot perform his past relevant work.  Muse, 925 F.2d at 789.  Salazar did not present any evidence showing that janitorial jobs could not be performed without twisting.  Thus, considering Salazar's burden and this lack of evidence, substantial evidence supports the finding that Salazar could perform his past relevant work.

Salazar also argues that "the vocational expert testified appellant could not work if pain medication sedated him."  He further argues that he can't work without it.  Salazar only testified, however, that medication sometimes affects his driving; he drives his wife to work, however, because he is the only driver in the family.

It is true that the vocational expert testified that if a person takes pain medication that interferes with his ability to

concentrate or if he does not take pain medication and he is unable to persist or maintain work activity for more than four to six hours at a time, such a limitation excludes competitive employment in a janitorial job. The ALJ stated, however, that Salazar did not allege any significant side effects of his pain or any other medication nor do the medical record contain any complaints of side effects of medications. "It is logical to assume that if the claimant were suffering significantly from any side affects [sic], the claimant would have complained to his treating physician, yet he has not done so." The record thus supports the ALJ's conclusions on this issue.

III

**New Evidence**

Salazar argues that new evidence shows that his back pain is aggravated by almost any type of activity. The new evidence is an April 17, 1994, report by Dr. William Taylor. Salazar argues that this evidence shows that he cannot be gainfully employed, thus he is entitled to summary judgment or remand.

The problem is that Salazar has not shown that this evidence is "new." Dr. Taylor diagnosed failed back surgery syndrome with mechanical low back pain. The medical impressions do not differ from those given by Dr. Simonsen. The portion of the medical report indicating that Salazar has "back pain aggravated by almost any type of activity" is not a medical finding, but part of the medical history presumably supplied by Salazar himself.

-11-

Nor can Salazar meet the good cause requirement.  There is no evidence that this evidence was not previously available or that this evidence relates to the period for which benefits were denied, that is, between August 29, 1991, his alleged disability onset date, and October 27, 1993, the date of the ALJ's decision.  Although a subsequent deterioration may form the basis for a new claim, to remand the case for that reason alone would be inconsistent with the principles of appellate review.  <u>See Johnson v. Heckler</u>, 767 F.2d 180, 183 (5th Cir. 1985).

A F F I R M E D.