IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 18, 2008

Charles R. Fulbruge III
Clerk

No. 07-51343
Summary Calendar

JESUS M DOMINGUEZ

Plaintiff-Appellant

V.

MICHAEL J ASTRUE, COMMISSIONER OF SOCIAL SECURITY

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:06-CV-913

Before KING, DAVIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

The Commissioner of the Social Security Administration ("Commissioner") denied Jesus M. Dominguez's claim for Social Security Disability Insurance Benefits ("DIB"). The district court affirmed that denial. For the reasons stated below, we affirm the district court.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTS AND PROCEEDINGS

The district court summarized the facts and procedural history in its order affirming the Commissioner's decision to deny Dominguez's claims:

> Plaintiff Jesus Dominguez ("Dominguez") filed for disability benefits on July 22, 2004 with an alleged onset date for his disability of April 1, 1989. In disability reports dated July 17 and April 17, 2004, Dominguez described himself as suffering from cirrhosis of the liver, mental confusion, back pain, sleep apnea and decreased hearing. He stated his conditions limited his ability to work because he was unable to sit, stand or walk for prolonged periods of time and had mental confusion. According to [Dominguez], he was first bothered by his conditions in 1989 and became unable to work at the same time.
>
> Dominguez reported losing his job both because of back pain and seizures, as well as company downsizing. In listing his prior jobs, [Dominguez] noted he had worked as a delivery driver from some time in 1982 to September 1987 and again from January to February 1989, but had not worked since.
>
> Records from Seton Medical Center indicate [Dominguez] was admitted through the emergency room on March 13, 1991. He reported having a seizure about 3:00 a.m. in his home while standing at a sink. The records note Dominguez reported a past history of frequent alcohol use, which he had stopped about five days prior. The impression noted is an isolated seizure, which was treated with Dilantin. His EEG, heart, lungs, vascular and bony structures were reported as normal and his blood chemistry was also within normal limits. The records note [Dominguez] had no past medical history and was taking no medications. [Dominguez] was released the following day with directions for follow up care at the VA clinic, but with no restrictions on his activity or diet.
>
> . . . .
>
> [Dominguez's] disability application was denied initially on August 30, 2004, and upon reconsideration on November 3, 2004. On December 17, 2004, [Dominguez] requested a hearing before an administrative law judge ("ALJ").
>
> On February 3, 2006, the ALJ conducted an administrative hearing, as which [Dominguez] appeared and was represented by counsel. Dominguez testified at the hearing he was currently fifty eight and the highest level of education he had acheived was a GED. He was married and living with his wife in a house.

[Dominguez] testified he became disabled on April 1, 1989 as a result of seizures. He reported having two or three seizures at that time and stated he had not worked since. Dominguez testified he had worked as a delivery driver, although he conceded he was not working at the time of his seizures. According to [Dominguez], he did not return to work because companies would not hire him to drive due to insurance concerns.

. . . .

Dominguez reported drinking a six pack of beer each day in 1989. He testified he stopped drinking in 1989 or 1990, after his seizures, when a doctor told him the seizures were probably because of the alcohol. [Dominguez] stated he began attending Alcoholics Anonymous some time after, when he was diagnosed with liver damage. He began attending as a requirement of staying in the transplant program at Baylor Hospital.

. . . .

[After the ALJ heard further testimony from Dominguez and his wife describing Dominguez's other conditions including water retention, memory problems, depression, and sleep apnea,] [v]ocational expert Donna Eagar ("Eagar") also testified at the hearing. Eagar classified [Dominguez's] prior job as delivery driver as medium, semi-skilled work. She noted his additional tasks of occasional household appliance delivery and installation were rated as heavy, skilled work. Eagar classified Dominguez's former job at a lumber yard as heavy, semi-skilled work.

In response to the ALJ's hypothetical, Eagar testified that an individual with the same age, education, and work history as [Dominguez] who is limited to medium simple work could perform the duties of a dining room attendant, or busboy, a hardware assembler, or a bagger in a grocery store. The judge further posed a claimant with the additional restriction of no hazardous machinery and delivery work driving, plus no climbing of scaffolds and ladders. Eagar testified such an individual would possibly be unable to work as a bagger, but could work as a hospital cleaner. Eagar further stated a person who was performing the job at the bottom level of acceptable would be able to maintain employment. She admitted an individual who missed work more than two times per month would not maintain employment.

In a March 29, 2006 decision, the ALJ denied [Dominguez's] claim on the grounds that he was not under a "disability," as defined in the Social Security Act. The ALJ concluded [Dominguez's] seizure disorder was severe within the meaning of the regulations,

3

but not severe enough to meet a listed impairment. She found, despite his exertional limitations, [Dominguez] was able to perform a significant range of medium work.

[Dominguez] appealed. The Appeals Council denied [Dominguez's] request for review of the ALJ's decision on September 19, 2006. [Dominguez] filed this action seeking judicial review of the ALJ's decision on November 16, 2006.

Dominguez v. Astrue, No. 06-CA-913, slip op. at 3–8 (W.D. Tex. Oct. 9, 2007). The magistrate judge entered a Report and Recommendation in which he found that the decision of the Commissioner was supported by substantial evidence and was in accord with the relevant legal standards. He recommended affirming the Commissioner's decision. Dominguez filed objections to the Report and Recommendation. The district court adopted the Report and Recommendation, affirmed the Commissioner and dismissed Dominguez's complaint on October 9, 2007. Dominguez appeals.

## II. STANDARD OF REVIEW

This court's "review of the Commissioner's decision is limited to determining whether that decision is supported by substantial evidence and whether the Commissioner has employed the correct legal standards." Kinash v. Callahan, 129 F.3d 736, 738 (5th Cir. 1997). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. . . . In our review, we do not reweigh the evidence nor do we substitute our judgment for that of the Secretary." Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995) (internal quotations and footnotes omitted).

## III. ANALYSIS

Dominguez makes three arguments on appeal. First, he argues that the ALJ applied the incorrect legal standard regarding alcohol addiction between Dominguez's last-insured date of March 1992 and his hearing in February 2006. Second, Dominguez argues that the ALJ's decision that his testimony was not

credible was not based on the proper legal standard. Third, Dominguez argues that the ALJ's decision did not consider his impairments and whether he could perform work under the proper legal standard.

A. The ALJ's Application of the Legal Standards Regarding Alcohol Addiction

To be eligible for DIB, a claimant must be insured. See George v. Chater, 76 F.3d 675, 676 (5th Cir. 1996) (citing 42 U.S.C. § 423(a)(1)(A)). The claimant bears the burden of establishing a disabling condition before the expiration of his insured status. See Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992) (citing 42 U.S.C. § 423(a), (c)). Evidence showing degeneration of a condition after the expiration of a claimant's insured status is not relevant to the Commissioner's disability analysis. See Torres v. Shalala, 48 F.3d 887, 894 n.12 (5th Cir. 1995). The parties agree that Dominguez was last insured on March 31, 1992. Therefore, the timeframe for the ALJ's consideration of Dominguez's disability claim is from April 1, 1989 (the date of the alleged onset of the disability) to March 31, 1992.

Dominguez argues that the ALJ should have evaluated his claim under the legal standards that existed at the time of his alleged impairment in 1992, when alcoholism would not have been a bar to receiving benefits. In March 1996, Congress passed the Contract with America Advancement Act ("CAAA"), which precluded Social Security benefits if either drug addiction or alcoholism is a contributing factor material to a determination of a disability and applied "to any individual who applies for, or whose claim is finally adjudicated by the Commissioner of Social Security with respect to, benefits under title II of the Social Security Act based on disability on or after the date of the enactment of this Act." Pub. L. No. 104-121, § 105, 110 Stat. 847, 853 (1996). This court has interpreted that language to preclude an award of benefits for claims based on alcoholism as a disability adjudicated after the March 29, 1996 passage of the

statute, regardless of when the disabling condition began. See Brown v. Apfel, 192 F.3d 492, 497 (5th Cir. 1999) (affirming the retroactive application of the CAAA).

Dominguez did not file his disability claim until July 2004, eight years after the 1996 enactment of the CAAA. Because his claim was not finally adjudicated before March 1996, the CAAA would have precluded any award for alcoholism-based benefits. Even though Dominguez notes that he met the listing for severe cirrhosis of the liver in 1996, his last date insured was March 31, 1992; therefore, the ALJ was not allowed to consider evidence showing degeneration of a condition after the expiration of a claimant's insured status.

Regardless, the record for the relevant time period of April 1989 to March 1992 does not support an alcohol-based disability finding. The record does not contain any medical records from Dominguez's alleged date of disability onset on March 1, 1989 to March 13, 1991. On March 13, 1991, Dominguez went to the hospital and self-reported a seizure. At that time, doctors documented Dominguez's history of frequent alcohol use, but noted that he had stopped using alcohol days prior to the seizure. The physician's report indicated that Dominguez was taking no medications and otherwise seemed in satisfactory health. The doctor released Dominguez without restrictions on diet or work. Although the ALJ considered Dominguez's testimony that he "might" have been drinking considerably in 1989, substantial evidence supports the ALJ's determination that, prior to March 1992, Dominguez was not disabled. Contrary to Dominguez's assertion, the ALJ was not required to obtain medical expert testimony to determine whether his alcohol use was disabling; the use and consideration of medical expert testimony is solely within the discretion of the ALJ. See 20 C.F.R. §§ 404.1526, 404.1527(f)(2)(iii).

B.    The ALJ's Consideration of Dominguez's Testimony

"The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled." Loya v. Heckler, 707 F.2d 211, 215 (5th Cir. 1983) (per curiam). "Moreover, a factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." Villa v. Sulllivan, 895 F.2d 1019, 1024 (5th Cir. 1990).

The record indicates that, after considering the medical evidence, application documents, and testimony at the hearing, the ALJ found that Dominguez's allegations regarding his limitations were not credible and listed in detail her reasons for discounting his credibility. "[W]e have no power to determine if the record contains substantial evidence to support [Dominguez's] claim; instead, we are confined to questioning only whether substantial evidence supports the [ALJ's] judgment." Hollis v. Bowen, 837 F.2d 1378, 1384 (5th Cir. 1988) (per curiam). We hold that it does. Our review of the record indicates that substantial evidence existed to support the ALJ's finding regarding Dominguez's credibility, including the fact that, aside from the doctor's report after Dominguez's visit to the hospital in March 1991, no other objective medical evidence of impairment was presented for the relevant period between April 1989 to March 1992. See id. at 1385 (holding that the absence of objective factors can justify the conclusion that a witness lacks credibility). In addition, the ALJ considered Dominguez's daily activities, which included performing contracted landscaping from time to time. Finally, the ALJ considered Dominguez's testimony about the location, duration, frequency, and intensity of his symptoms, but an individual's own statements regarding pain and symptoms are not determinative of disability status. See 20 C.F.R. § 404.1529.

C. The ALJ's Determination of Disability

The five-step legal standard for "determining whether or not a claimant is capable of performing substantial gainful activity" is set out in 20 C.F.R. § 404.1520(b)-(f). Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (per curiam). The steps are:

> 1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.
>
> 2. An individual who does not have a "severe impairment" will not be found to be disabled.
>
> 3. An individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.
>
> 4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.
>
> 5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

Id. Dominguez bears the burden of proving the first four steps. See Watson v. Barnhart, 288 F.3d 212, 216 (5th Cir. 2002). After that, the burden shifts to the ALJ to prove the fifth step. Id. Social Security rules and regulations reserve to the Commissioner the final responsibility for determining an individual's residual functional capacity, of whether that residual functioning capacity prevents him from doing past relevant work, and the ultimate question of whether an individual is disabled under the Social Security Act. See 20 C.F.R. § 404.1527.

Dominguez complains that the ALJ erred by not proving the fifth step. This argument is without merit. Although the ALJ found that Dominguez met his burden for steps one through four, the ALJ satisfied her burden in proving step five to determine that Dominguez retained the residual functioning capacity

to perform a significant range of medium work, including lifting and carrying fifty pounds occasionally and twenty-five pounds frequently, and sitting, standing, or walking for six hours in an eight-hour workday. The ALJ also found that Dominguez was able to understand, remember, and carry out simple, repetitive tasks.

Dominguez argues that the ALJ's residual functioning capacity assessment was inconsistent with the findings of the treating and examining doctors. However, the records available for the relevant time period, April 1989 to March 1992, do not support his argument. The ALJ properly considered the opinions of the state agency medical consultants who evaluated the evidence at the initial and reconsideration stages of the administrative review process, see 20 C.F.R. § 404.1527(f); those physicians determined that the medical records for that time period did not establish evidence of cirrhosis of the liver, heart problems, hearing problems, sleep apnea, or mental impairment.

Dominguez further argues that the ALJ failed to prove that he could perform work existing in significant numbers in the national economy. The ALJ may meet that burden either by relying on the medical-vocational guidelines contained in Appendix 2 of the Social Security regulations or by obtaining the testimony of a vocational expert. See Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir. 1987). Here, the ALJ properly relied on vocational expert testimony to demonstrate the existence of a significant number of jobs in the national economy that he could perform. Specifically, the record reveals that the vocational expert related that there were 20,000 dining room attendant jobs in Texas and 270,000 in the nation; 8,000 hardware assembler jobs in Texas and 270,000 in the nation; 50,000 grocery bagger jobs in Texas and 600,000 in the nation; and 18,000 hospital cleaner jobs in Texas and 240,000 in the nation. "Under 42 U.S.C. § 423(d)(2)(A) and 20 C.F.R. § 404.1566, work exists in significant numbers in the national economy if it exists in significant numbers

in either the region where the claimant lives or in other regions of the country." Lirley v. Barnhart, 124 F. App'x 283, 283–84 (5th Cir. 2005) (per curiam). A common-sense reading of the ALJ's findings reveals that the ALJ succeeded in meeting his burden for proving that work that Dominguez was qualified to perform existed in significant numbers in the national economy.

## IV. CONCLUSION

The judgment of the district court is AFFIRMED.