243 N.J. Super. 53 (1990)
578 A.2d 876
INSTRUCTIONAL SYSTEMS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
COMPUTER CURRICULUM CORPORATION, A CORPORATION OF THE STATE OF DELAWARE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 1, 1990.
Decided July 16, 1990.
*54 Before Judges MICHELS, DEIGHAN and BROCHIN.
Daniel M. Wall, of the California bar, admitted pro hac vice, argued the cause for appellant (McCarter & English, attorneys; Teresa L. Moore, on the brief).
Robert E. Rochford argued the cause for respondent (Dunn, Pashman, Sponzilli, Swick & Finnerty, attorneys; Robert E. Rochford and Warren S. Robins, on the brief).
PER CURIAM.
In this case we consider whether the contractual relationship between a computer manufacturer and one of its resellers may be construed as a "franchise" within the meaning of the New Jersey Franchise Practices Act, N.J.S.A. 56:10-1 et seq. For the following reasons, we hold that the relationship does not constitute a franchise and that the manufacturer's termination of its relationship with the reseller in several states therefore does not provide the reseller with a cause of action under the Act.
Defendant Computer Curriculum Corporation (CCC) is a Delaware corporation headquartered in Palo Alto, California. It produces and markets an integrated learning system which uses computer hardware and proprietary software to teach and monitor a student's progress in such areas as mathematics, reading, language skills and computer science. Plaintiff Instructional Systems, Inc. (ISI), a New Jersey corporation with its primary place of business in New Jersey, has served as the exclusive reseller of CCC products in New England and the Middle Atlantic states for the past 15 years.
On July 12, 1984, CCC and ISI entered into the contract at issue here. By that contract, CCC appointed ISI as the exclusive *55 reseller of CCC products to certain categories of customers in Connecticut, Delaware, Maine, Maryland, Massachusetts, New Hampshire, New Jersey, New York, Rhode Island, Vermont and Washington, D.C. Paragraph 13.01 of the contract provided that "This agreement shall ... continue in effect until July 31, 1989." In addition, the contract contained a choice of law provision which provided that the parties' agreement "shall be construed and interpreted, and the legal relations created by it shall be determined, in accordance with the laws of the State of California."
By the late 1980's, a substantial portion of ISI's revenues was generated through the sale of CCC products. ISI also made a profit sublicensing CCC's proprietary software and training customers how to operate the CCC systems it sold. In 1988, however, CCC informed ISI that it was unhappy with ISI's allegedly poor performance in several states and rejected a proposal by ISI to renew the reseller agreement for another year. As an alternative, CCC offered ISI a new two-year contract covering the three states where it considered the company to be performing adequately: New Jersey, New York and Massachusetts. Following extended discussions, CCC and ISI entered into this contract on January 30, 1989.
Immediately after entering into the 1989 agreement, ISI filed a complaint against CCC in the Chancery Division. The complaint alleged that the 1984 agreement contemplated renewal, that CCC had coerced ISI into signing the 1989 agreement, and that CCC had violated the New Jersey Franchise Practices Act, N.J.S.A. 56:10-1 and following, by imposing "unreasonable standards of performance" on ISI. In addition, it set forth claims for breach of contract, breach of implied covenant, tortious interference with prospective economic advantage, unfair competition, unjust enrichment and breach of fiduciary duty. CCC removed the suit from the Superior Court of New Jersey to the United States District Court for the District of New Jersey on the basis of diversity of citizenship.
*56 Following discovery, ISI moved before the United States District Court for the District of New Jersey for a preliminary injunction enjoining CCC from enforcing the 1989 agreement and directing the parties to abide by the terms of the 1984 agreement pending further action by the court, as well as for a partial summary judgment stating that the 1984 agreement constituted a franchise within the meaning of the Franchise Practices Act. CCC opposed this motion, arguing in part that the 1984 agreement was not a franchise. In the alternative, it claimed that even if the agreement was a franchise, the Act could not be used to enjoin an out-of-state company from terminating franchises in states other than New Jersey without violating the Commerce Clause of the United States Constitution, Art. 1, § 8, cl. 3.
In light of the issues raised under the Franchise Practices Act, ISI moved before the United States District Court for an order remanding the state law aspects of the case to the New Jersey courts under the doctrine of "Pullman abstention." See Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).[1] Pursuant to this motion, the judge announced his intention to "administratively terminate" the federal court action and remand the following two issues to the New Jersey courts:
(a) Whether the Act has extraterritorial reach beyond the State of New Jersey and, if so, to what extent; and
(b) What are the definitions and standards of "community of interest," "license" and "place of business" under the Act?
In his order to this effect, however, the United States District Court judge explicitly retained for himself "jurisdiction over this matter and the parties" as well as "application of the principles of law determined by the state court to the facts of this case."
*57 During a follow-up hearing, ISI argued that by refusing to allow a New Jersey court to apply its interpretation of the Act to the facts of the case, the judge's abstention order was essentially instructing the court to render an advisory opinion on an abstract question of law. In response to this argument, the judge explicitly clarified his order by noting that it authorized the New Jersey court to determine "whether or not there is a community of interest between ISI and CCC," as well as "whether ISI has a place of business" within the meaning of the Act. He also stated that the state court would have no choice but to consider the underlying facts of this case in deciding whether the Act could be applied extraterritorially.
Consistent with the direction of the District Court, ISI subsequently filed a new complaint in the Chancery Division alleging that the 1984 agreement constituted a franchise and that CCC had violated the Franchise Practices Act by failing to renew the agreement without good cause contrary to N.J.S.A. 56:10-5 and by imposing unreasonable standards of performance contrary to N.J.S.A. 56:10-7(e). The complaint sought "a declaration of the rights and liabilities of CCC and ISI under their relationship," an order enjoining CCC from terminating its relationship with ISI, attorneys' fees and costs.
After hearing oral argument on motions for summary judgment submitted by both parties, the Chancery Division issued a declaratory judgment holding in part that the 1984 agreement constituted a franchise within the meaning of the Franchise Practices Act and that, as a matter of law, the Act applied to the 1984 agreement. In explaining the reasoning behind its decision, the court declared that the parties had met all of the criteria of a franchise under the Act. It found that CCC had granted a "license" to use its trade name to ISI, a "community of interest" existed between CCC and ISI, the parties had "contemplated" that ISI would establish a "place of business" in New Jersey, and ISI had in fact maintained such a "place of business." The Chancery Division also observed that the choice of law provision in the 1984 agreement was contrary to fundamental *58 New Jersey policies and therefore unenforceable. While conceding that the Legislature never intended to give the Act extraterritorial effect, the court held that the Legislature had intended to make the Act applicable to all New Jersey franchises, regardless of whether the market areas of such franchises extend beyond New Jersey.
In this appeal, CCC argues that the Chancery Division overstepped the limits of its jurisdiction by deciding issues that the District Court's abstention order did not explicitly authorize it to decide. It also claims that the court erred in determining that the 1984 agreement constitutes a franchise and that the Franchise Practices Act may be applied extraterritorially. We hold that CCC's jurisdictional argument lacks merit but conclude that the 1984 agreement does not constitute a franchise within the meaning of the Franchise Practices Act because CCC did not grant a "license" to ISI as that term is used within the Act's definition of "franchise." This conclusion renders all other issues raised by CCC moot.
CCC's claim that the Federal court's abstention order required the New Jersey courts to render an advisory opinion is groundless it ignores the fact that the Federal District Court judge explicitly modified his abstention order to avoid such a result.
CCC also takes issue with the Chancery Division's decision to apply New Jersey law to the facts of this case rather than California law, contrary to the choice-of-law provision in the 1984 agreement. However, we have held elsewhere that a franchisor may not use a choice-of-law provision to evade the requirements of the franchise law in effect in a franchisee's home state, where this law affords greater protection than the franchise law of the franchisor's home state. See Winer Motors, Inc. v. Jaguar Rover Triumph, Inc., 208 N.J. Super. 666, 671-672, 506 A.2d 817 (App.Div. 1986). In any event, our decision that the 1984 agreement does not constitute a franchise under New Jersey franchise law makes it unnecessary to decide *59 whether the Chancery Division was correct in disregarding the choice-of-law provision.
The Franchise Practices Act applies only to the termination of a "franchise." The Act defines a franchise as "a written arrangement ... in which a person grants to another person a license to use a trade name, trade mark, service mark, or related characteristics, and in which there is a community of interest in the marketing of goods or services ..." N.J.S.A. 56:10-3a [emphasis added]. Furthermore, N.J.S.A. 56:10-4(1) provides that the Act applies only to a franchise "the performance of which contemplates or requires the franchisee to establish or maintain a place of business within the State of New Jersey."
CCC contends that the 1984 agreement does not constitute a franchise because (1) it never granted a "license" to ISI within the meaning of N.J.S.A. 56:10-3a; (2) there was no "community of interest" between CCC and ISI; (3) the parties never "contemplated" that ISI would establish a "place of business" in New Jersey; and (4) ISI never in fact maintained a "place of business" in New Jersey. We consider the license issue dispositive.
Several courts have addressed the meaning of the word "license" in N.J.S.A. 56:10-3a. In Finlay & Associates v. Borg-Warner Corp., 146 N.J. Super. 210, 369 A.2d 541 (1976), aff'd on other grounds 155 N.J. Super. 331, 382 A.2d 933 (App.Div.), certif. den. 77 N.J. 467, 391 A.2d 483 (1978), for instance, a distributor claimed that its agreement with a manufacturer granted it a license under the Act because the manufacturer furnished it with matchbooks and other advertising materials, and allowed the distributor to place its name alongside the manufacturer's name on these materials. In rejecting this argument, the court noted:
Although the word "license" has many applications, it means in this statute to use as if it is one's own. It implies a proprietary interest and this is what the Legislature intended in effect.... The trademark, tradename reference means and implies use of that name in the very business title of the franchisee and a *60 holding out or perhaps representation to the public of some special relationship or connection. Simply selling goods or distributing materials which bear the manufacturer's name or trademark does not "license" use of the "trademark." [citation omitted]. Nor is the common interest in selling a product and making a profit sufficient.
Finlay, supra, 146 N.J. Super. at 219, 369 A.2d 541.
In Neptune T.V. & App. v. Litton Microwave, Etc., 190 N.J. Super. 153, 462 A.2d 595 (App.Div. 1983), by contrast, we found that an electronics manufacturer (Litton) had granted a valid "license" to an appliance center (Neptune). Although the parties' agreement expressly stipulated that Neptune was an independent contractor rather than an agent or employee of Litton, it permitted the center to hold itself out as "an authorized Litton service source" in its advertising, letterheads and calling cards. Id. at 157, 462 A.2d 595. Distinguishing these facts from those in Finlay, we observed:
[L]imited use by an independent contractor of another's trade name in that contractor's own business does not ipso facto constitute a license to use a trademark within the intendment of the franchise legislation. This is so because a hallmark of the franchise relationship is the use of another's trade name in such a manner as to create a reasonable belief on the part of the consuming public that there is a connection between the trade name licensor and licensee by which the licensor vouches, as it were, for the activity of the licensee in respect of the subject of the trade name.
Id. at 160, 462 A.2d 595, citing Susser v. Carvel Corp., 206 F. Supp. 636, 640 (S.D.N.Y. 1962), aff'd 332 F.2d 505 (2d Cir.1964), app. dism. 381 U.S. 125, 85 S.Ct. 1364, 14 L.Ed.2d 284 (1965); see Colt Industries v. Fidelco Pump & Compressor Corp., 700 F. Supp. 1330, 1335-1336 (D.N.J. 1987), aff'd 844 F.2d 117 (3d Cir.1988) (Oral agreement designating distributor as a service center of manufacturer's products did not grant distributor a license where distributor never held itself out to the public as such). Compare Shell Oil v. Marinello, 120 N.J. Super. 357, 359, 294 A.2d 253 (Ch.Div. 1972), modified and aff'd 63 N.J. 402, 307 A.2d 598 (1973), cert. den. 415 U.S. 920, 94 S.Ct. 1421, 39 L.Ed.2d 475 (1974) (Agreement between oil company and service station authorizing service station to sell gasoline under the trade name "Shell" is clearly a franchise which the *61 Legislature intended to be subject to the Franchise Practices Act).
The 1984 agreement between CCC and ISI does not authorize ISI to promote itself as an official service source for CCC hardware. Nor does it grant ISI the right to use CCC's name as its own. Section 6.02 ("Use of Name") provides only that ISI "shall use its best efforts to maintain and promote CCC's name, trademark and logo on the Products," and authorizes the company "to use CCC's name, trademark and logo in its advertising, exhibits, trade shows, public relations materials and manuals as the same relate to the Products."
ISI argues that its obligations under the 1984 agreement make it clear to customers that CCC "vouches" for its activities. Specifically, it contends that certain provisions in the agreement designating ISI as the exclusive seller of CCC products in New England and the Middle Atlantic states, as well as those authorizing ISI to use CCC's trademark in its advertising and to train customers in the use of CCC products, create a relationship in which customers must necessarily consider CCC and ISI to be interchangeable. However, none of the activities which ISI actually engages in would allow a customer to conclude that there is a special connection between CCC and ISI of the type found in genuine franchise arrangements. While ISI refers to CCC in its advertising and promotional literature, it does not use CCC's name as its own. Furthermore, there are no signs or other types of advertising outside of ISI's place of business that mention CCC. These facts strongly suggest that ISI is merely an independent contractor that happens to sell CCC products. We thus conclude that the 1984 agreement did not grant ISI a "license" as that term is used in the Act.
Since the 1984 agreement never granted a license to ISI, the agreement cannot be considered a franchise within the meaning of the Franchise Practices Act. Consequently, we decline to consider whether the Act, if it were applicable to the relationship *62 between CCC and ISI, could have been applied extraterritorially. The judgment appealed from is therefore reversed.
NOTES
[1] The classic case for application of the Pullman doctrine involves a constitutional attack on a state statute under circumstances where one possible construction of the statute would avoid or substantially alter the constitutional issue. Frederick L. v. Thomas, 578 F.2d 513, 516 (3d Cir.1978).